ROBERT RASKIND, Appellant and Cross Appellee, v.
ELIZABETH RASKIND, Appellee and Cross Appel-
lant. —325 S. W. (2d) 617.

Western Section, Jackson.    March 17, 1959.

Certiorari denied by Supreme Court June 5, 1959.

584

Harold R. Ratcliff and Howard R. Paul, Memphis, for appellant.

Livingston, Vineyard & Sherman and John D. Walt, Memphis, for appellee.

BEJACH, J.   This cause is before this Court on broad appeals of both the original complainant, Dr. Robert Raskind, and the original defendant and cross complainant, Mrs. Elizabeth Raskind.   For convenience and clarity, the parties hereto will be referred to by their respective names.

On March 7, 1957, Dr. Robert Raskind filed his original bill in this cause seeking a divorce from Mrs. Elizabeth Raskind on the ground of cruel and inhuman treatment, alleged to consist of nagging, harassment, false charges against him, both personally and in his profession.   On

April 15, 1957, Mrs. Elizabeth Raskind filed an answer and cross bill. In her answer she denied the charges made against her in the original bill. In her cross bill, Mrs. Raskind charged that Dr. Raskind was guilty of cruel and inhuman treatment toward her, consisting mainly of neglect and outbursts of rage. The parties hereto were married at Columbia, South Carolina December 21, 1949, and lived together as husband and wife in Memphis, Tennessee until about September 20, 1956, at which time Dr. Raskind left home and has never returned. No children were born of the union. Dr. Raskind is a neuro-surgeon with a large and lucrative practice. Mrs. Raskind was, at the time of the marriage, and for sometime thereafter, a dietitian at the Baptist Hospital in Memphis.

An enormous amount of testimony was taken by both sides. The record before us is quite voluminous, consisting of five volumes aggregating 1,181 pages, besides an additional volume of exhibits.

At the hearing, the Chancellor dismissed the original bill and sustained the cross bill. Although Mrs. Raskind's cross bill prayed only for a divorce from bed and board, the Chancellor, under authority of sections 36-802 and 36-819, T. C. A. as construed by the Supreme Court in Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749, granted to Mrs. Raskind an absolute divorce. A reference was ordered to ascertain the amount of Dr. Raskin's property, and that of Mrs. Raskind, and also what contributions had been made by Mrs. Raskind to the family fund, before awarding alimony in the cause. This reference, however, was cancelled when the parties entered into a stipulation covering the matters to be reported on, and a consent order was entered cancelling the reference.

From the supplemental opinion of the Chancellor, filed August 22, 1958, which summarizes the material parts of said stipulation, we quote, as follows:

"The reference was never held but counsel for the parties eventually entered into stipulations which covered all matters required of the reference. In the fall of 1957, the husband became seriously ill and an operation resulted. Medical proof was heard on June 19 and July 8, 1958 as to the extent and nature of this illness. Following an intestinal hemorrhage, a considerable portion of the stomach was removed along with the spleen. The liver is also damaged. The effect is that the husband has been advised to materially decrease the long hours he formerly devoted to his medical practice. He apparently continues, however, to work very diligently. Whereas his gross income in 1956, before the illness, was about $125,000, it appears that his gross income in 1958 will approximate $90,000.

"The parties to this action were married in 1949. At that time the husband was employed by a firm of physicians at a salary of $7,500 per year. The wife was also employed and continued working for a while after marriage. About that time she also became the beneficiary of an inheritance. Not long after marriage, the husband left his salaried employment and entered private practice for himself. His income increased materially each year until it reached the aforesaid figure in 1956.

"According to the stipulation of counsel, the husband's assets as of January 31, 1958 included the following (using rounded figures):

Cash, stocks, bonds, interest in medical
    practice, etc. _____$200,800.00
Accounts Receivable, face value_____ 77,500.00

                                  $278,300.00

One-half value assigned to him in
    home _____$16,500.00
Less mortgage thereon _____ 4,500.00

                        $12,500.00
One-half value of furnishings__ 2,000.00
        Total _____$292,300.00

    The stipulation showed the wife's separate estate on the same date to consist of the following:

Cash, bonds, jewelry, etc._____$ 13,200.00
Real estate (from inheritance) _____ 2,300.00
One-half value assigned to
    her in home _____$16,500.00
One-half value of furnishings__ 2,000.00    18,500.00

        Total _____$ 34,000.00

    The same stipulation reflected the fact that the wife had contributed the following amounts to the family fund:

Cash and bonds at time of marriage_____$ 18,500.00
Inheritance and interest earned after
    marriage _____ 30,200.00
Wages earned after marriage _____ 3,300.00

        Total _____$ 52,000.00''

A final decree was entered August 28, 1958, from which we quote, as follows:

"That Complainant and Cross Defendant and Defendant and Cross Complainant are both residents of Shelby County, Tennessee, and have been such continuously for more than two whole years next preceding the filing of their respective bills, and said parties intermarried at Columbia, South Carolina, on December 21, 1949, lived together as husband and wife until September 20, 1956, when Complainant and Cross Defendant left the Defendant and Cross Complainant at the residence, 5160 Barry Road in Memphis, Tennessee, and that there are no children as a result of such marriage:

"That the charges contained in the Original Bill have not been sustained while the charges contained in the Cross Bill have been sustained and that Complainant and Cross Defendant is guilty of such cruel and inhuman treatment or conduct towards Defendant and Cross Complainant as renders cohabitation unsafe and improper and unsafe and improper for Defendant and Cross Complainant to be under the dominion and control of the Complainant and Cross Defendant; and

"That the Defendant and Cross Complainant should be awarded an absolute divorce under the statutory authority accorded the Court, rather than a bed and board divorce as prayed in the Cross Bill:

"It Is, Therefore, Ordered and Decreed that the Original Bill of Complainant and Cross Defendant be dismissed and upon the Cross Bill of Cross Complainant and Defendant the bonds of matrimony

heretofore subsisting between Robert Raskind and Elizabeth Raskind be and the same are hereby absolutely dissolved and forever held for naught and both of said parties are returned to the status of unmarried persons.

"It further appears and the Court finds that Defendant and Cross Complainant is entitled to alimony from Complainant and Cross Defendant, that Complainant and Cross Defendant has sufficient present estate from which such alimony may be awarded in solido without any payments in futuro and that the interest of Complainant and Cross Defendant in the residence known as 5160 Barry Road in Memphis, Shelby County, Tennessee, the interest of Complainant and Cross Defendant in the furniture and furnishings contained in or about said residence, the payment by Complainant and Cross Defendant of the amount of the presently existing indebtedness which encumbered said real estate at the time of the separation and the further payment in cash by Complainant and Cross Defendant of Eighty-five Thousand Dollars ($85,000.00) constitutes suitable and proper alimony:

"It Is, Therefore, Further Ordered, Adjudged and Decreed that all of the right, title and interest of Complainant and Cross Defendant in and to said real estate is hereby awarded Defendant and Cross Complainant as alimony and same is hereby divested out of Complainant and Cross Defendant and vested in Defendant and Cross Complainant, which real estate is more particularly described as follows:

"Lot 13, George Harsh Unrecorded Subdivision of the George Harsh 90.06 acres of the Pillow 500 acre Entry No. 562, being more particularly described as follows:

"Beginning at a point in the north line of Shady Grove Road (60 feet wide) where same is intersected by the east line of Barry Road (50 feet wide); thence northwardly with the east line of Barry Road 164.50 feet to the southwest corner of Lot 12 of said subdivision; thence north 76 degrees 35 minutes east 294.38 feet to an iron pin in the southeast corner of said Lot 12; thence south 13 degrees 25 minutes east along the east line of Lot 13 and also the east line of said subdivision 281.3 feet to an iron pin in the north line of Shady Grove Road; thence north 83 degrees 25 minutes west along the north line of Shady Grove Road 355.87 feet to the point of beginning;

"It Is, Therefore, Further Ordered, Adjudged and Decreed that all of the right, title and interest of Complainant and Cross Defendant in and to the furniture and furnishings located in or about said real estate is hereby awarded Defendant and Cross Complainant as alimony and same is hereby divested out of Complainant and Cross Defendant and vested in Defendant and Cross Complainant;

"It Is, Therefore, Further Ordered, Adjudged and Decreed that Defendant and Cross Complainant is hereby awarded as alimony the sum of Three Thousand Four Hundred Thirty-Three & 20/100 Dollars ($3,433.20) which has been stipulated to be the amount of the presently existing indebtedness which encumbered said real estate at the time of separation

and that Defendant and Cross Complainant have and recover of Complainant said sum, for which let execution issue;

"It Is, Therefore, Further Ordered, Adjudged and Decreed that Defendant and Cross Complainant is hereby awarded as alimony the sum of Eighty-five Thousand Dollars ($85,000.00) and that Defendand and Cross Complainant have and recover of Complainant and Cross Defendant said sum, for which let execution issue.

"It further appears and the Court finds that the firm of Livingston, Vineyard & Sherman have represented Defendant and Cross Complainant in the successful defense against the Original Bill and in the successful prosecution of the Cross Bill, and as her solicitors have rendered valuable legal services for which they should receive compensation and that Fifteen Thousand Dollars ($15,000.00) as compensation for the legal services furnished as solicitors for Defendant and Cross Complainant in this cause, for the payment of which a lien is granted upon the recovery of Defendant and Cross Complainant hereunder.

"It further appears and the Court finds that Defendant and Cross Complainant should receive from Complainant and Cross Defendant as part of her costs Ten Thousand Dollars ($10,000.00) toward the payment of such fee:

"It Is, Therefore, Further Ordered, Adjudged and Decreed that Defendant and Cross Complainant is hereby awarded as part of her costs the sum of Ten Thousand Dollars ($10,000.00) and that she have and

recover of Complainant and Cross Defendant said sum, for which let execution issue.

"It further appears and the Court finds that all of the remaining costs of the cause should be adjudged against Complainant and Cross Defendant, with the exception of the costs incurred by Defendant and Cross Complainant for the services of the reporter whom she employed in the court proceedings and the expense incurred in connection with the investigation and procuring of certain evidence:

"It Is, Therefore, Further Ordered, Adjudged and Decreed that with said exception the costs of the cause be assessed against Complainant and Cross Defendant, for which let execution issue."

Both sides noted exceptions to the final decree, prayed and have perfected broad appeals therefrom to this Court. Dr. Raskind has filed thirteen assignments of error, and Mrs. Raskind has filed four assignments of error. We deem it unnecessary to copy these assignments of error into this opinion, but the questions presented by same will be discussed and disposed of.

The principal contentions of Dr. Raskind are that his original bill should have been sustained and the divorce granted in his favor, that the amount of alimony awarded, and also the amount of attorneys' fees awarded against him are excessive, and that the attorneys' fees awarded against him should not have been taxed as costs in the cause. In his assignments of error, Dr. Raskind also contends that no injunction should have been issued against him in this cause, that the injunction which was issued should have been dissolved, and he complains further against alleged improper trial practice of the

Chancellor, consisting of private interrogation of three of the witnesses. Mrs. Raskind, by her assignments of error, contends that in addition to the alimony allowed her in solido, alimony in futuro should also have been awarded, that more than $15,000 should have been awarded as attorneys' fees, that all of the attorneys' fees awarded should have been assessed against Dr. Raskind, and that the expenses which she had incurred in preparing her case, including especially the amount paid by her for a court reporter, should have been assessed as costs against Dr. Raskind.

This cause is before us under the provisions of section 27-303, T. C. A. for trial de novo, but with a presumption of the correctness of the decree of the lower court, unless the preponderance of the evidence is contrary to the decree. It would unduly prolong this opinion even to summarize the more than 1,000 pages of testimony on which the learned Chancellor based the decree of divorce in favor of Mrs. Raskind and against Dr. Raskind. After a careful consideration of same, however, it is our opinion that the evidence does not preponderate against the findings of fact made by the Chancellor; and, consequently, the decree of divorce must be affirmed. Such affirmance does not, however, necessarily foreclose the questions presented with reference to alimony and counsel fees, so we will now dispose of these.

The amount of alimony to be awarded is largely in the discretion of the trial judge or chancellor, and the appellate courts of Tennessee are disinclined to revise the exercise of such discretion, except in cases where it has manifestly been abused. On this subject, from the opinion of former Presiding Judge Anderson of this

Court, in the case of Rush v. Rush, 33 Tenn. App. 496, 503, 232 S. W. (2d) 333, 336, we quote as follows:

"Alimony is allowed in recognition of the husband's common law liability to support the wife. The amount is in the sound discretion of the judge or chancellor and his action will not be disturbed except in a rare case of abuse of that discretion, Walden v. Walden, supra, (13 Tenn. App. 337, 344). No hard or fast rule can be laid down for the determination of the amount of the award or the form which it takes, and there has been no attempt in the adjudicated cases to do so. The facts and circumstances in each particular case must govern. While it has been said that where the award is in solido it is not usual to allow more than half of the husband's estate after making deductions for his indebtedness, Stillman v. Stillman, 66 Tenn. 169, the authority of the court to award all or any part of the husband's estate according to the particular facts or circumstances has been recognized. Boggers v. Boggers, 65 Tenn. 299.

"In Williams v. Williams, 146 Tenn. 38, 44, 236 S. W. 938, 940, the court makes this pertinent statement: 'The husband owes the duty to his wife of rendering to her suitable support without reference to her financial condition. He ought not to be allowed to escape the performance of that duty by affording his wife cause for separation and placing her in a financial situation worse than it was before his misconduct brought about a legal separation.'

"Formerly, it was the uniform practice in a case of absolute divorce granted to the wife to award alimony in solido from such resources as the husband

had at the time. Indeed, it was held that in such a case, the court had no power to bind the future earnings of the husband. Boggers v. Boggers, 65 Tenn. 299. See also Chenault v. Chenault, 37 Tenn. 248. While it is still the general rule to award alimony in gross where the estate of the husband is such as to serve the purpose of the law, a decree awarding alimony in futuro is valid and enforceable in this jurisdiction, and where the husband has no estate which will answer the purpose, but has an earning capacity, a monthly allowance to be paid by him by way of alimony, is authorized. Brown v. Brown, 156 Tenn. 619, 4 S. W. (2d) 345; Buchholtz v. Buchholtz, 175 Tenn. 87, 132 S. W. (2d) 208.''

Also, as was said by Mr. Justice McKinney, speaking for the Supreme Court in Taylor v. Taylor, 144 Tenn. 311, 317, 232 S. W. 445, 446:

''The rule of decreeing alimony *in solido* in cases of absolute divorce should be adhered to when the defendant owns sufficient property for that purpose, and, upon the assumption that $4500, in addition to the lot and furniture, is sufficient alimony for the complainant in this case, the decree of the Court of Civil Appeals is correct. But, in our opinion, the sum decreed to the complainant, everything being considered, is inadequate and out of proportion to the income received by the defendant.''

■■ Our conclusion is that alimony in futuro should not be awarded in addition to alimony in solido, if the amount awarded in solido is considered sufficient. In the instant case, the amount of alimony awarded in solido

is, in our opinion, under all the circumstances, fair and ample.

■ Likewise, the allowance of counsel fees is largely left to the discretion of the trial judge or chancellor. In the case of Riley v. Riley, 9 Tenn. App. 643, this Court said:

"The fee to be paid to the plaintiff's attorney by the defendant in a divorce case, where the wife successfully prosecutes a suit for divorce against her husband, is treated in Tennessee as part of the expenses incident to the cause and allowed as alimony. Winslow v. Winslow, 133 Tenn. 663, 671 [182 S. W. 241]; Shy v. Shy, 7 Heisk. 125.

"An attorney's fee, amounting to ten per cent (10%) or more of the value of the alimony recovered for a wife in the successful prosecution of a divorce suit, is a proper fee to be allowed and paid to her attorney. Winslow v. Winslow, 133 Tenn. 663 [182 S. W. 241]; McBee v. McBee, 1 Heisk. 558; Bailey v. Bailey, 6 Tenn. App. 272.

"The rule in Tennessee on the question of allowance of attorney's fees by the nisi pruis courts is that the allowance made will not be interfered with by appellate courts, unless some injustice has been perpetrated, such matters being largely within the discretion of the lower courts. [Holston] Bank v. Wood, 125 Tenn. 6 [140 S. W. 31]; Bank [of Commerce & Trust Co.] v. Buckingham, 144 Tenn. 344 [233 S. W. 668]."

In Holston National Bank v. Wood, 125 Tenn. 6, 140 S. W. 31, 34, the Supreme Court, speaking through Mr. Justice Green (later Chief Justice), said:

"We think the sum allowed by the chancellor is a reasonable fee, and therefore no more than that will be allowed by this court. We are not disposed to interfere with the allowance of attorney's fees in the lower court, unless we can see that some injustice has been perpetrated. Such matters are to a great extent within the discretion of the court, and we will not interfere with the exercise of that discretion, unless we think the allowance made is materially wrong."

We think the principles of law, as set out in the above quotations, are conclusive against both Dr. Raskin's contention that too much was allowed, and also against Mrs. Raskind's contention that too little was allowed.

Counsel for Mrs. Raskind have also made a motion in this Court for allowance of additional compensation for services here. That motion will be denied.

■ But, it is insisted on behalf of Mrs. Raskind, and this question is raised by one of her assignments of error, that even if $15,000 allowed by the Chancellor as counsel fees be deemed adequate, all of it should have been assessed against Dr. Raskind. At first blush, assuming the amount awarded to be correct, this contention would appear to be sound; but a careful reading of the Chancellor's supplemental opinion filed August 22, 1958 indicates that he may have thought it equitable for Mrs. Raskind to pay part of the fees awarded, because of the restoration to her of what the Chancellor referred to as her 'contribution toward the family fund'. In that connection, and for the purpose of accomplishing that result, he awarded to her all of Dr. Raskin's interest in the home place at 5160 Barry Road, Memphis, Tennessee,

together with all of his interest in the furniture and furnishings therein, and required him to discharge the mortgage encumbering the real estate. This, he said, restored Mrs. Raskind's contribution to the family fund. In addition, and purely as alimony, he awarded to her a judgment or decree for $85,000. If this was the Chancellor's reason for requiring Mrs. Raskind to pay part of the award for counsel fees, we concur in his reasoning. From the Chancellor's supplemental opinion, we quote as follows:

"Further, if a wife is entitled to alimony, it is not contingent upon her contribution to family finances. It is this Court's opinion that Mrs. Raskind should be restored to her former position insofar as her separate estate is concerned. Divesting the husband's one-half interest in the home and furniture out of him and into the wife, free of encumbrances, in the Court's opinion, will accomplish this. Unincumbered, this property has a value of about $18,500, which, when added to her present assets of about $34,000, approximates the wife's original separate estate of $52,000. Counsel for both sides agree that the wife should have the home and the furnishings.

"As for alimony, counsel are in complete disagreement. The husband's solicitor urges that the wife be awarded $20,000 to $25,000 cash. Her solicitors contend that she is entitled to half of the husband's estate exclusive of the residence and furnishings, that is, about $140,000, plus one-fourth of his income, payable monthly. With neither position can the Court agree.

"The husband's position is the wife contributed nothing to justify substantial alimony. The facts don't support this contention. While the husband's phenominal earnings are due to his skill and diligence, he might never have left his salaried employment except for the security which was afforded by his wife's savings, her inheritances, and her earnings. In the Court's opinion, these things contributed to his determination to launch his own medical career with its resulting success, along with her encouragement and assistance and the love and affection bestowed, not measurable in dollars.

"The Court believes that all these circumstances, plus the fact that the difficulties between the parties were brought on by the husband's neglect, should afford the wife far greater alimony than that suggested. Furthermore, it must be borne in mind that the wife wanted no divorce at all, and, at most, a bed and board divorce, with the hope that a reconciliation could be effected, to which the husband would not agree.

\* \* \* \* \* \*

"In the subject case, while the wife did contribute some earnings and other funds, she was in no position to physically assist her husband in his medical practice which produced his substantial estate. Furthermore, the marriage was not one of long duration, and, even at termination, the parties are both comparatively young. While it is true that the husband's income is large now, the period of time over which it will continue is a matter of conjecture because of the condition of his health. The Court

reiterates the opinion that in solido alimony without regard to the husband's present or future earnings is the proper award to be made to the wife.''

Assignments of error by Dr. Raskind to the effect that the Chancellor erred in granting an injunction in this case, and, having granted same, in failing to dissolve it at the hearing, present questions which we deem unnecessary to decide. The effect of such injunction has been to preserve, subject to execution, the property, disposition of which by Dr. Raskind was enjoined. The motion to dissolve said injunction in this Court was granted on condition that a bond be given which would have the effect of preserving the property involved for protection of Mrs. Raskind's rights. The property preserved by said injunction, or the bond as a substitute therefor, will now be available for satisfaction of the decree in favor of Mrs. Raskind. The question has, therefore, in our opinion, become moot.

Dr. Raskind's assignment that it was ''error to tax the attorneys' fee of $10,000 as a part of the costs of the cause'' is, in our opinion, theoretically sound. It is contrary to the public policy of Tennessee to have attorneys' fees, as such, adjudged as costs against the losing party in a lawsuit. Stringfield v. Hirsh, 94 Tenn. 425, 29 S. W. 609; Williams v. Burg, 77 Tenn. 455; Gillespie v. Federal Compress & Warehouse Co., 37 Tenn. App. 476, 500, 265 S. W. (2d) 21. As stated above, however, attorneys' fees in a divorce case may be properly allowed as part of the alimony awarded. Winslow v. Winslow, 133 Tenn. 663, 671, 182 S. W. 241; Shy v. Shy, 54 Tenn. 125; Riley v. Riley, 9 Tenn. App. 643, 644. To us it seems immaterial, in the final result of the instant case, whether the $10,000 awarded against Dr. Raskind for counsel

fees be treated as part of the costs of the cause or as part of the alimony adjudged against him. The decree to be entered in this Court may include it as part of the alimony. In any event, under the provisions of section 27-117, T. C. A., the Chancellor's error on this subject must be treated as harmless error. In this same connection, Mrs. Raskind's assignment that the Chancellor was in error in refusing to adjudge as part of the costs her expenses incurred in connection with this litigation, including, especially, the cost of a court reporter, must be disposed of in the same manner. Such expense certainly should not have been adjudged as part of the court costs, and the Chancellor's exercise of his discretion in refusing to award same as part of the alimony, will not be reviewed or changed by this Court.

With reference to Dr. Raskind's assignments that it was error for the Chancellor to confer privately, "off the record", and in his chambers with witnesses, Mrs. Christine H. Fisher, Dr. Marion Moore, and Dr. Dick C. McCool, while we do not approve the practice and procedure of the Chancellor with reference to these witnesses, we think the harmless error statute, section 27-117, T. C. A., is sufficient to prevent a reversal on account of same. The Chancellor's affidavit, with reference to his interview or conference with Dr. McCool, has heretofore been the subject of a motion to strike same from the record in this cause, which motion this Court has denied. In our opinion, the most that Dr. Raskind, as appellant in this Court, could be entitled to with reference to these assignments of error, would be to have all of the testimony of these particular witnesses stricken from the record, or not considered by the Court in arriving at its decision. The testimony of these wit-

nesses is such an insignificant part of the total volume of the testimony, that such disposition of the matter would not affect the final result. For that reason, as well as because of the provisions of section 27-117, T. C. A., the assignments of error dealing therewith, must be over-ruled.

It results that all of the assignments of error filed in this Court, including both those filed by Dr. Robert Raskind as appellant, and also those filed by Mrs. Elizabeth Raskind as appellant, must be overruled,—and the judgment of the lower court will be affirmed. A decree will be entered in this Court, affirming the decree of the Chancery Court of Shelby County, with the slight modifications hereinabove indicated, and otherwise in conformity with this opinion; after which, this cause will be remanded to the Chancery Court of Shelby County, Tennessee for enforcement of same.

The costs of the cause, including those of the lower court, as well as those of this Court, will be adjudged against Dr. Robert Raskind and the sureties on his bonds filed in this Court and in the lower court.

Avery, P.J. (Western Section), and Carney, J., concur.