BRIAN DAVID McCRAY,                )
                                    )
        Plaintiff/Appellant,        )
                                    )       Appeal No.
                                    )       01-A-01-9612-CH-00553
VS.                                 )
                                    )       Maury Chancery
                                    )       No. 93-191
IRENE CAROL KLANSECK McCRAY,        )
                                    )
        Defendant/Appellee.         )

**FILED**

August 1, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF MAURY COUNTY
AT COLUMBIA, TENNESSEE

THE HONORABLE JIM T. HAMILTON, JUDGE

WILLIAM S. FLEMING
207 West 8th treet
P. O. Box 90
Columbia, Tennessee 38402-0090
        Attorney for Plaintiff/Appellant

L. BRUCE PEDEN
MOORE & PEDEN
29 Public Square
P. O. Box 981
Columbia, Tennessee 38402-0981
        Attorney for Defendant/Appellee

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The husband sued for absolute divorce, claiming cruel and inhuman treatment and irreconcilable differences.  The wife denied that her husband was entitled to a divorce, and she counterclaimed for a divorce from bed and board.  After a hearing, the trial court dismissed the husband's complaint and awarded the wife a divorce from bed and board and custody of the four minor children.  The husband was ordered to pay alimony in futuro, child support and attorney fees.

On appeal, the husband argues that it was error not to grant the parties an absolute divorce, that there was no good reason for the court to order an amount of child support in excess of the guidelines, that the alimony was excessive, that he could not afford to pay the attorney fees, and that the non-specific award of "reasonable visitation" was unworkable.  We affirm the trial court in part and reverse it in part.

## I.  Divorce

The record reveals that Brian McCray and Irene Klanseck were both born in Detroit Michigan; that they married in 1972 when they were both eighteen years old; that they became the parents of five sons and two daughters; that Mr. McCray worked at a General Motors auto plant; and that the wife also worked intermittently during the marriage in addition to taking care of home and family.  In 1990 Brian McCray took a job at the Saturn plant in Spring Hill, and the family moved to Tennessee.  Shortly thereafter their youngest child was diagnosed with cancer.  He died in 1992.

There had been a fair amount of domestic strife during the twenty-two years of the parties' marriage, including some incidents when the police had to be

called. In March of 1993 an explosive dispute between the parties led Mr. McCray to leave the marital home, and his wife to file for an ex parte order of protection. On April 6, 1993, Mr. McCray filed his complaint for absolute divorce. Ms. McCray answered and counterclaimed, accusing the petitioner of cruel and inhuman treatment and inappropriate marital conduct, and asking the court to grant her a divorce from bed and board. The counterclaim stated:

> "Defendant herein seeks a divorce from bed and board and opposes an absolute divorce from the bonds of matrimony; however, alternatively, in the discretion of the court, is entitled to an absolute divorce from the bonds of matrimony as expressly provided for in T.C.A. 36-4-102 in the event the Court finds and concludes that Defendant should not be granted a divorce from bed and board."

Following a hearing on May 12, 1993 the Petition for Order of Protection and the Complaint for Divorce were consolidated. The wife was granted custody of the children, with reasonable visitation for the husband. He was also ordered to pay child support pendente lite of $2,570 per month and spousal support of $930 per month.

The case came to trial on Friday, August 18, 1995. At that time, Mr. McCray was living with his girlfriend, Kelly McClarnon, who was four and a half months pregnant with his child, and Ms. McCray was getting ready to start nursing school at Columbia State Community College.

The proof at trial indicated that the loss of her youngest child had devastated Irene McCray emotionally, and that she had come under the care of David A. Burns, M.D. Her attorney introduced into evidence a letter from Dr. Burns that stated that he was treating her for Attention Deficit Hyperactivity Disorder as well as for depression, and that he had prescribed medication for her condition. Dr. Burns further stated:

- 3 -

". . . Mrs. McCray . . . also suffers from a learning disability, and requires extra time and effort to progress and master concepts, as well as to adjust to change. Nearly every major change in her life has been accompanied by prolonged periods of decreased functioning, lasting up to six (6) months.

"It is my fear that finalizing divorce at the same time she is to start nursing school would significantly decrease her chances at being successful in this demanding endeavor, which is very important to her being able to be self supportive, and to therefore be able to function as a divorced mother."

Ms. McCray testified that she would be unable to start school on Monday if the court granted her a divorce on Friday. On direct she responded to a question from her attorney as follows:

Q. Now Ms. McCray, do you want your husband to come home?

A. I want him -- he can stay with Kelly, and when I'm ready to give him his divorce, I'll come in and see you and sign the papers. I'm not ready right now. Emotionally I cannot handle it. I never said I wanted him to come home, I don't.

After hearing all the evidence, the court stated in an order filed December 22, 1995:

This Court is convinced that the granting of an absolute divorce would devastate Ms. McCray emotionally and psychologically to the point that she will not be able to function, particularly in her efforts to begin a full-time registered nursing curriculum. Her testimony, her demeanor, her mannerisms in open Court, Mr. McCray's admissions to this effect, her parent's testimony, all compel the conclusion that the fear expressed by her physician in his letter admitted into evidence is well founded.

The court accordingly dismissed Mr. McCray's complaint for absolute divorce and granted Ms. McCray a divorce from bed and board.

We do not believe that when reconcilation between the parties is no longer possible either party is entitled to exercise a veto over the question of divorce. As our Supreme Court has said:

> "In a divorce action the desires of the parties, particularly the party without fault, are given consideration, but such do not control the action of the court."

*Abney v. Abney*, 433 S.W.2d 847 (Tenn. 1968).

In light of the fact that neither party believes reconciliation is possible, we believe that this case provides a prime example of the situation Chief Justice Green warned us of in this frequently quoted passage.

> "We must take into consideration 'the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried.' Society is not interested in perpetuating a status out of which no good can come and from which harm may result.

*Linger v. Linger*, 56 S.W.2d 749, 752 (Tenn. 1933).

However, having thoroughly reviewed the record, briefs and arguments of counsel, this court is not convinced that the trial court erred in refusing to grant Ms. McCray an absolute divorce under the unusual circumstances in existence at the time of trial. Moreover, neither *Linger* nor the statute, Tenn. Code Ann. § 36-4-102(b), overrides the basic discretion of the trial court to grant or deny a divorce in cases such as this.

Nonetheless, we note that the parties have now lived apart for more than three years, and that Tenn. Code Ann. § 36-4-102(b) sets out a ground for divorce as follows:

> The circuit, chancery or other such court specially empowered to grant divorces also <u>has the power to grant</u> absolute divorces to either party where there has been a final decree of divorce from bed and board, or of separate maintenance for more than two (2) years, <u>upon a petition being filed by either party</u> that sets forth the original decree for divorce from bed and board, or separate maintenance, and that the parties have not become reconciled. The court granting the absolute divorce shall make a final and complete adjudication of the support and property rights of the parties. However, nothing in this subsection shall preclude the divorce forum from granting an absolute divorce before the two (2) years has expired. (Emphasis added)

Mr. McCray indicated his willingness at trial to maintain health insurance on Ms. McCray and the children if the court granted her an absolute divorce. Should Mr. McCray file a new petition, we see no obstacle to prevent the trial court from ordering an absolute divorce if it sees fit to do so.

## II. Child Support

The trial court acknowledged that based upon Mr. McCray's most recent income statement, the guidelines would require child support of $1,478 per month for four children, but it ordered him to pay $2,000 per month. The court justified its deviation from the guidelines by noting that Mr. McCray had earned more in previous years by working a substantial amount of overtime at the Saturn plant. The court also considered the fact that Mr. McCray had the economic benefit of living with Ms. McClarnon, who was also employed at Saturn.

Mr. McCray testified that overtime was no longer as available as it had been, because the productive capacity of the plant had been increased by the addition of a third shift, and Friday and Saturday work was no longer compensated at overtime rates. He stated that he was willing to do Sunday overtime work if that was available, but that a neck injury and subsequent disc surgery left him with a permanent restriction that limits the number of hours that he can work in any one day.

Ms. McCray's brother, Ken Klanseck, testified to the contrary that overtime was still freely available at Saturn. Mr. Klanseck works on the same shift as Brian McCray, but in a different area of the plant. The trial court characterized Mr. Klanseck's testimony as "the credible testimony in this record," but it is not altogether clear that the opportunities for overtime in Mr. McCray's area of the plant are the same as in Mr. Klanseck's area. Further, the appellee did not challenge Mr. McCray's

account of his injury. We also do not believe it was appropriate for the trial court to take Ms. McClarnon's income into account in setting child support.

We therefore reverse the trial court's award of child support and remand this case to enable the court to bring its order into conformity with the guidelines. Any amount in excess of the guidelines that Mr. McCray may have paid since the date of the order appealed from will be applied to his arrearages.

Mr. McCray has also argued that it was error for the trial court to award Ms. McCray support for the parties' seventeen year old son, Michael McCray, who has now reached his majority, but who was in the custody of the Juvenile Court at the time of these proceedings. According to Tenn. Code Ann. § 37-1-151 the parents may be liable for the expenses incurred by the State in maintaining custody of an unruly or delinquent child. Where a prior child support order exists, the state may claim the payments ordered for the support of that child. We therefore find that the trial court did not err, and we affirm its order in this respect.

### III. Alimony

Mr. McCray expressed a willingness to pay alimony "within reason," and suggested that any alimony terminate when Ms. McCray completes nursing school, or after 36 months, whichever comes first. The trial court awarded Ms. McCray $930 per month in futuro. On appeal, Mr. McCray argues that the trial court erred in not ordering rehabilitative alimony, which is of limited duration, and in setting an amount that is beyond his ability to pay.

Our legislature has expressed a preference for rehabilitative alimony over alimony in futuro whenever it is possible for the disadvantaged spouse to make

him or herself economically independent. Tenn. Code Ann. § 36-6-101(d). Ms. McCray managed to work during her marriage, and she intends to earn her nursing certificate, which if she is successsful will enable her to become self-supporting. We therefore agree that the trial court erred in not ordering modifiable rehabiliative alimony. However in view of Ms. McCray's learning disability, and other unusual circumstances which may prolong the normal period of rehabilitation, we believe that the alimony should be ordered for a period of ten years from the date of the divorce. Future modifications may be made upon the presentation of competent proof of changed circumstances. The question of future modifications is to remain within the control of the trial court.

In regard to the question of the appropriate amount of alimony, Tenn. Code Ann. § 36-5-101(d) also sets out the relevant factors for the court to consider in making its determination. For the purposes of this case, the most important factors are the relative earning capacity of the parties; the duration of the marriage; the age, physical and mental condition of each party; and the relative fault of each party. All these factors suggest that a substantial award of alimony is warranted, and we affirm the amount determined by the trial court. We note that the economic hardship that Mr. McCray complains of will be somewhat alleviated by the reduction in his child support obligation discussed above.

### IV. Visitation

The trial court granted Mr. McCray "reasonable visitation privileges as agreed upon by the parties." Unfortunately, the parties found it difficult to agree on visitation. Mr. McCray complains that Ms. McCray would only allow him to see the children at her house, and that at such times she took advantage of his presence to complain to him, and to get him to perform minor house repairs, thus effectively preventing him from spending an adequate amount of time alone with the children.

Ms. McCray has been opposed to having her children, particularly her daughters, stay overnight at Ms. McClarnon's house because of what she regards as an immoral living arrangement between Mr. McCray and Ms. McClarnon.

We are tempted to resolve this question by remanding this case to the trial court for issuance of a standard visitation order which sets out in specific enforceable terms the visitation rights of the non-custodial parent. However we find evidence in the testimony of both parties of some flexibility on visitation issues, and we will therefore leave the current visitation order untouched. Of course the trial court retains jurisdiction to order specific visitation in the event the parties cannot reach agreement.

## V. Attorney Fees

The trial court ordered Mr. McCray to pay attorney fees in the amount of $8,000 on behalf of Ms. McCray. Although taxing attorney fees as part of costs is contrary to public policy in most kinds of cases, such fees may be properly allowed in divorce cases as part of the alimony awarded. *Raskind v. Raskind*, 45 Tenn.App. 583, 325 S.W.2d 617 (1959). An award of attorney fees is appropriate in cases where the final decree does not provide the obligee with funds out of which counsel may be paid. *Harwell v. Harwell,* 612 S.W.2d 182 (Tenn. App. 1980).

In the present case, the division of marital property does not provide the wife with a source of funds from which to pay her attorney. Mr. McCray argues that he likewise does not have the resources to pay attorney fees, because he has no property of any value, and his entire net income is being used to pay alimony, child support and arrearages.

Since attorney fees are considered an award of alimony, the trial court should again consider the relevant factors in 36-5-101(d)(1) before making such an award. The first of these factors is "[t]he relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources."

We believe that for purposes of alimony, the support that Mr. McCray receives from Ms. McClarnon may be considered either as reducing his need or as a financial resource that falls in the category of "all other sources." We therefore do not believe that the trial court abused its discretion in awarding attorney fees to Ms. McCray.

## V. Tax Considerations

In his Motion to Alter or Amend the Judgment, Mr. McCray asked the trial court, among other things, to allow him to claim his children as dependents on his income tax return. The trial court overruled the motion, but did not directly address the tax issued. Ms. McCray's attorney candidly admitted on appeal that the deductions did not help his client, because her primary source of income was the alimony Mr. McCray was paying. We accordingly remand this case for the entry of an order awarding the deductions to Mr. McCray.

## VI.

The order of the trial court is affirmed in part and reversed in part. Remand this cause to the Chancery Court of Maury County for further proceedings consistent with this opinion. Tax the costs on appeal equally between appellant and appellee.

_____
BEN H. CANTRELL, JUDGE


CONCUR:



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION



_____
WILLIAM C. KOCH, JR., JUDGE