FILED

December 4, 2001

Cecil Crowson, Jr.
Appellate Court Clerk

**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT JACKSON**

LAWRENCE WOODWARD HAMILTON,                    )
                                                                                    )
          Plaintiff/Appellant,              ) **Shelby Circuit No. 143097 R.D.**
                                                                                    )
VS.                                                                            ) **Appeal No. 02A01-9601-CV-00009**
                                                                                    )
BRENDA K. SMITH HAMILTON,               )
                                                                                    )
          Defendant/Appellee.              )


APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE KAY S. ROBILIO, JUDGE


**SEYMOUR S. ROSENBERG**
Memphis, Tennessee
Attorney for Plaintiff/Appellant


**DAVID W. CAMP**
**WALDROP & HALL, P.A.**
Jackson, Tennessee
Attorney for Defendant/Appellee


**AFFIRMED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

      In this divorce action, the Plaintiff, Lawrence Woodward Hamilton, filed his petition

for divorce on July 20, 1993. The Defendant, Brenda Kay Smith Hamilton, filed a counter-complaint seeking a divorce on the grounds of inappropriate marital conduct. The trial court granted the Defendant's request for a divorce on the grounds of inappropriate marital conduct. The trial court awarded the parties' marital residence as well as household furnishings to the Defendant. The Plaintiff was ordered to pay all outstanding marital debts other than the first and second mortgage on the marital residence, all expenses incurred by the Defendant as a result of this action including the Defendant's attorney fees and $2,200.00 per month in permanent alimony. The trial court awarded the Defendant one-half of the Plaintiff's retirement proceeds and ordered the Plaintiff to maintain the Defendant on his health insurance policy for three years. The trial court further ordered the Plaintiff to maintain a $50,000.00 life insurance policy naming the Defendant as the irrevocable beneficiary. The Plaintiff has appealed the judgment of the trial court arguing that the trial court erred in awarding the Defendant permanent alimony and attorney fees. For the reasons stated hereafter, we affirm the judgment of the trial court.

## FACTS

The Plaintiff and Defendant were married on December 30, 1961. At the time of the marriage, the Plaintiff was nineteen years old, and the Defendant was sixteen years old. The Defendant abandoned her high school studies at the age of sixteen during the eleventh grade in order to get married and have a child. The Defendant later attended Miller Hawkins Business School for approximately three or four months where she studied typing, shorthand and English. The Defendant terminated her studies due to health problems and family responsibilities.

Two children were born of the parties' marriage. A son, Woody, was born several months after the marriage and a daughter, Deidra, was born seventeen months thereafter. Both children are well beyond the age of majority.

During the course of the parties' thirty-two year marriage, the Defendant remained

2

unemployed except for two jobs that she held for a brief period of time. For approximately five months in 1963, the Defendant was employed at Pic-Pac Grocery Store as a cashier. For six months in 1970, the Defendant worked for Jackson Life Insurance Company as an office clerk. The Defendant ceased working for both of her employers due to nervousness and responsibilities at home.

On November 13, 1993, the Plaintiff told the Defendant that he wanted a divorce. On November 15, 1993, the Defendant was seen in the emergency room at Methodist Hospital and was given "an injection because she was hysterical." Shortly thereafter on November 17, 1993, the Defendant was admitted to Lakeside Hospital under the care of Dr. John Wilson, a psychiatrist. After discharge from Lakeside Hospital, the Defendant remained under the care of Dr. Wilson and began therapy and treatment under Ludmilla Gafford, a licensed clinical social worker.

According to medical records, the Defendant has been treated for panic disorder, agoraphobia and bilateral connective tissue disorder or fibrositis since the parties' separation in 1993.

The Defendant was forty-nine years of age at the time of the divorce. At trial, the Defendant testified that she was currently unable to obtain gainful employment due to her depression and excessive nervousness. The Defendant stated that she was taking medication for her depression and that her nervousness presented itself in the form of "panic attacks" whereby she hyperventilates and sometimes "blacks out."

Ludmilla Gafford testified that the Defendant is currently unable to function in a work environment and that it would take time and further treatments to reduce the Defendant's depression, phobia and panic attacks. Although Gafford stated that the Defendant has the intellectual capacity to obtain a GED, Gafford testified that it would be very difficult at the present time for the Defendant to concentrate and study. Gafford was unable to testify as to the Defendant's potential future capacity to work.

Dr. Edwin Scott, a physician specializing in internal medicine, stated that the Defendant is not currently employable due to her psychological and emotional condition. Dr. Scott would not comment on the Defendant's capacity to work in the future.

Based upon a physical examination of the Defendant, Dr. William J. Oswald, a physician specializing in family practice, stated that he saw no physical ailments that would prevent the Defendant from obtaining gainful employment "other than getting her nervous condition stabilized."

Jan Crossett, a vocational rehabilitation counselor, prepared a vocational assessment report on behalf of the Defendant. Crossett recommended that the Defendant "begin to give some consideration to long-term vocational planning." Crossett opined that the Defendant's "employability will likely improve as her condition improves and it would be a good idea for her to be re-evaluated in a year to update the vocational plan." Crossett, however, stated that "[e]mployment in the open labor market is not recommended at this time."

**LAW**

The Plaintiff has raised two issues on appeal:

1) Whether the trial court erred in awarding the Defendant permanent alimony or alimony *in futuro*; and

2) Whether the trial court erred in awarding the Defendant attorney fees.

T.C.A. § 36-5-101(d)(1) provides as follows:

> [i]t is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient .

4

As noted by the supreme court in <u>Self v. Self</u>, 861 S.W.2d 360, 361 (Tenn. 1993), T.C.A. § 36-5-101(d)(1) reflects a clear legislative intent to allow an award for permanent alimony only "when the court granting the divorce finds that the economic rehabilitation is not feasible and long-term support is necessary."

In determining whether the granting of an order for payment of support and maintenance to a party is proper, the court shall consider all relevant factors, including:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in Sec. 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1).

The Plaintiff argues that the trial court erroneously awarded the Defendant alimony *in futuro* because the trial court did not make a finding that the Defendant was not capable of being rehabilitated. The Plaintiff concedes that the Defendant "was probably incapable of working at that moment [at the time of trial];" however, the Plaintiff contends that the trial court's award of alimony *in futuro* was improper because the court made no finding as to

5

the Defendant's future capacity to work.

There is abundant evidence in the record supporting the trial court's finding that the Defendant was incapable of entering the work force at time of trial. Testimony from four expert witnesses revealed that the Defendant was incapable of working due to her psychological condition. Two of the four expert witnesses further testified that they were unable to state an opinion as to the Defendant's future employability.

Because there is an absence of evidence in the record revealing that the Defendant can be rehabilitated and can obtain gainful employment in the future, we agree with the trial court's award of alimony *in futuro*.

Finally, we note that the awarding of attorney fees in a divorce proceeding is within the sound discretion of the trial court, and this court will not interfere with the trial court's award unless the evidence preponderates against such a decision. Houghland v. Houghland, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); Storey v. Storey, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); Batson v. Batson, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988); Lyon v. Lyon, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988); Crouch v. Crouch, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964). Attorney fees in a divorce case may be properly allowed as part of the alimony awarded. Raskind v. Raskind, 325 S.W.2d 617, 625 (Tenn. Ct. App. 1959). When deciding whether to award attorney fees as alimony *in solido*, consideration should be given to the factors enumerated in T.C.A. § 36-5-101(d). Storey v. Storey, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992). In noting the Defendant's limited earning capacity, minimal education and debilitating psychological condition, we do not find that the trial court abused its discretion in its award of attorney fees to the Defendant.

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.

_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.


_____
LILLARD, J.


7