IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 6, 2003 Session

## LEWIS GREGORY LANGLEY v. SARAH ROUNDS LANGLEY

**Appeal from the Circuit Court for Davidson County**
**No. 01D-973     Marietta Shipley, Circuit Judge**

_____

**No. M2002-02278-COA-R3-CV - Filed December 19, 2003**

_____

Husband's proposed division of marital assets was adopted by the trial court. Wife received more than one-half of the assets, amounting to one and one-quarter million dollars, mostly liquid. Husband was nevertheless ordered to pay substantial alimony, both *in solido* and *in futuro*, together with attorney fees and certain expenses, including the maintenance of a three-quarter million dollar policy of life insurance with Wife as beneficiary. The alimony *in solido* award is affirmed, and the remaining awards are vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part and Vacated in Part**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Michael W. Binkley, Nashville, Tennessee, attorney for appellant, Lewis Gregory Langley.

Rose Palermo, Nashville, Tennessee, attorney for appellee, Sarah Rounds Langley.

### OPINION

The issues in this domestic relations case are (1) the propriety of an award of alimony *in solido*; (2) the propriety of requiring Husband to maintain a policy of life insurance; (3) the propriety of an award of alimony *in futuro*; (4) the propriety of an award to the wife of attorney fees; and (5) the propriety of requiring Husband to pay the expert fees for the appraisal of his business.

A divorce was granted to Wife on account of Husband's admitted adultery. The Wife received $1,232,920.00, or about fifty-seven percent, of the marital property, of which $1,033,898.00 were liquid assets. She is fifty-three years old: Husband is fifty-two. They have no children, and married in 1983. Neither the divorce nor the division of marital assets is questioned on appeal.

Wife is a graduate of a business school, and retired from State employment in 1999 after thirty years of service, entitling her to *net* pension benefits of $17,376.00 yearly. She almost immediately was employed by Baptist Hospital at a *net* yearly salary of $33,000.00, with retirement benefits vested.

Wife was awarded a promissory note in the amount of $180,000.00, drawing ten percent interest, executed by Fireworks, Inc., as alimony *in solido*, further alimony *in solido* of $360,000.00, payable $60,000.00 per year for six years, and alimony *in futuro* of $2000.00 monthly for twelve months, followed by $1000.00 per month until Wife's death or remarriage. She was also awarded $12,000.00 attorney fees.

## I.

These financials are somewhat jarring, and to place them in reasonable perspective requires an in-depth revelation of Husband's business, Fireworks, Inc. He is fifty-two years old, and until 1989 was essentially an unskilled laborer. He has no formal education beyond high school.

In 1989, he borrowed $75,000.00 from a bank, using the jointly titled residence as collateral,[1] to fund his newly-organized business, Fireworks, Inc., which sells pre-fabricated fireplaces, garage doors, central vacuums and marble mantles. The business was successful from the beginning. Within three years the encumbrance of $75,000.00 on the residence had been paid.

As the housing market expanded, so did Fireworks, Inc. Husband paid himself $1000.00 weekly, and all remaining funds were saved. The business generated yearly surpluses of $100,000.00 to $300,000.00, before taxes, which were invested in money market accounts.

At the time of the divorce, the parties had saved nearly 2.5 million dollars. This remarkable accomplishment affected their lifestyle minimally.[2]

## II.

The trial court made all findings from the Bench. She found that: these parties "both lived incredibly frugally," and made "good decisions about dividing the assets"; Wife earns a net of about $50,000.00 [yearly] including her retirement; Wife's income will increase if she elects to continue to work; Wife says she needs $6,000.00 per month; her marital share of $1,000.000.00[3] should be

---

[1] The residence was inherited by Wife in 1985, then valued at $48,700.00. During the ensuing years it was substantially improved, and at the time of trial had a market value of $180,400.00. This residence was awarded to Wife.

[2] Mostly involving the University of Tennessee's football program. Twelve season tickets, *inter alia*, were awarded to Wife.

[3] Actually about $1,033,000.00, entirely liquid.

invested, and "while she is figuring out how to properly invest the million dollars or so that she has, I'm going to order alimony in two different ways."

Although somewhat unclear, the trial judge then held "even if we take the lowest amount that he has earned over the years which is $300,000.00 in income, if he takes an equivalent amount of expenses . . . if he took out $80,000.00 he still has another $120,000.00 to put in an account. . . ."

This finding, which was the essential basis for the award of alimony *in solido*, is subject to a degree of interpretation. Further findings, coupled with the judgment, offer clarification. We note that the finding "the lowest amount that he has earned over the years is $300,000.00" is factually incorrect, although the evidence, taken in context, supports the conclusions that Fireworks, Inc., owned wholly by Husband, will likely continue to generate profits greatly in excess of Husband's needs, and *would have increased the marital estate pro tanto had these parties remained married*, keeping in mind the Husband initiated these proceedings after he presumably destroyed the marriage.

An award of alimony is fact-driven, and some of the relevant factors include those enumerated in Tennessee Code Annotated § 35-5-101(d)(1):

(i)    The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii)    The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii)    The duration of the marriage;

(iv)    The age and mental condition of each party;

(v)    The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi)    The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child or the marriage;

(vii)    The separate assets of each party, both real and personal, tangible and intangible;

(viii)    The provisions made with regard to the marital property as defined in § 36-4-121;

(ix)    The standard of living of the parties established during the marriage;

(x)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi)    The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Many of these factors clearly mitigate against the award of alimony *in solido*: Wife has liquid assets of about $1,033.000.00, an upscale residence, automobiles, State retirement benefits, lucrative employment with vested benefits, social security benefits when age-eligible, and other prerogatives. Her assured immediate income exceeds $100,000.00 per year, and she has no debts.  The trial judge evidently believed that Wife should share in the future earnings of Fireworks, Inc., as a matter of justice, in light of all the circumstances, and this belief, translated into a finding, is the basis for the award of alimony *in solido*.  Fault is a factor which may be considered, but an award of unneeded alimony assessed, in actuality, as punishment, or as a palliative to the wife, is anathema and contrary to law.  *See,* ***Duncan v. Duncan***, 686 S.W.2d 568 (Tenn. Ct. App. 1984).

While the award of alimony *in solido* is indeed generous we cannot find, in a *de novo* review which requires that we presume the judgment is correct unless the evidence preponderates against it, that the evidence preponderates against it when all relevant factors are considered.  Rule 13(d), Tenn. R. App. P.

### III.

The award of alimony *in futuro* obviously is inappropriate and cannot be justified.  The clear preponderance of the evidence reflects that Wife, a millionaire in her own right, has no need of further financial assistance from Husband, *see* ***Burlew v Burlew***, 40 S.W.3d 465 (Tenn. 2002), and we see no need to belabor this issue, other than to observe that while Husband is an accomplished entrepreneur, Wife by no means is in a transitional status.  Her job skills, in fact, were remarked upon by the trial judge who stated "I'm going to order alimony in two different ways while she [Wife] is figuring out how to properly invest the million dollars or so that she has." ***Crabtree v. Crabtree***, 16 S.W.3d 356 (Tenn. 2000), ***Bogan v. Bogan***, 60 S.W.3d 721 (Tenn. 2001), ***Lancaster v. Lancaster***, 671 S.W.2d 501 (Tenn. Ct. App. 1984).

The award of alimony *in futuro* is accordingly vacated.

### IV.

The award of attorney fees is not justified, because Wife is clearly able to pay her own attorney fees.  *See* ***Marcus v. Marcus***, 993 S.W.2d 596 (Tenn. 1999).  Such fees may be allowed in proper cases as alimony *in solido*, ***Raskind v Raskind***, 325 S.W.2d 617 (Tenn. Ct. App.1959), but a host of cases hold that such awards are inappropriate where the recipient has sufficient funds to pay her legal expenses.  *See, e.g.,* ***Wade v. Wade***, 897 S.W.2d 702 (Tenn. Ct. App. 1974): ***Harwell v. Harwell***, 612 S.W.2d 182 (Tenn. Ct. App. 1980).  While an award of attorney fees is considered to be largely in the discretion of the trial court, and generally will not be disturbed on appeal except upon a clear showing of abuse of discretion, ***Houghland v. Houghland***, 844 S.W.2d 619 (Tenn. Ct.

App. 1992), ***Crouch v. Crouch***, 385 S.W.2d 288 (Tenn. Ct. App.1964), we find that an award of attorney fees in this case cannot be justified, and it is hereby vacated.

## V.

To secure the payment of the alimony obligations the trial court ordered Husband to maintain a $750,000.00 life insurance policy with Wife as beneficiary. Husband assails this requirement as unreasonable. We have discussed in detail the rationale of the alimony *in solido* award, that being the justiciable entitlement of Wife to a future portion of the reasonably anticipated profits of Fireworks, Inc., in the form of alimony *in solido*. It is not controverted that this business will likely provide Husband with the ability to acquire future capital assets and income greatly in excess of the relative ability of Wife to acquire assets or income. Hence, alimony *in solido* was awarded in order to level the financial playing field. Under the circumstances of this case we see no justification for the oneration of Husband with the expense of a policy of life insurance,[4] keeping in mind that his obligation for alimony *in futuro* has been vacated.

## VI.

Husband complains that the trial judge abused her discretion in requiring him to pay more than half of the expert fees incurred for the valuation or appraisal of his business. We have carefully reviewed the judgment, and can find no decretal provision addressing this issue, other than the *Wife* shall be responsible for payment of any unpaid balances owed to Richard Garrett, CPA.[5]

The judgment, as modified, is affirmed, with costs on appeal assessed evenly to the parties.

_____
WILLIAM H. INMAN, SENIOR JUDGE

---

[4] The type of policy, whether term or straight life, was not mentioned. The insurability of Husband does not appear. The cost of a three-quarter million dollar policy was not mentioned.

[5] We assume that Husband refers to the Bench-pronounced comments of the trial judge in arguing that he ought not to bear the entire costs of the evaluation and appraisal. Be that as it may, it is the *judgment*, entered September 5, 2002, to which we must look, not the comments of the judge.