BRIAN DAVID McCRAY, )
)
    Plaintiff/Appellant, )
) Maury Chancery
) No. 93-191
VS. )
) Appeal No.
) 01-A-01-9704-CH-00170
IRENE CAROL KLANSECK McCRAY, )
)
    Defendant/Appellee. )

**FILED**

December 17, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE MAURY COUNTY COURT
AT COLUMBIA, TENNESSEE

HONORABLE JIM T. HAMILTON, JUDGE

WILLIAM S. FLEMING
207 West 8th Street
P.O. Box 90
Columbia, Tennessee 38402-0090
ATTORNEY FOR PLAINTIFF/APPELLANT


L. Bruce Peden
MOORE & PEDEN
29 Public Square
P.O. Box 981
Columbia, Tennessee 38402-0981
ATTORNEY FOR DEFENDANT/APPELLEE

**REVERSED IN PART,
MODIFIED AND AFFIRMED IN PART,
AND REMANDED.**

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

BRIAN DAVID McCRAY,                    )
                                       )
    Plaintiff/Appellant,               )
                                       )       **Maury Chancery**
                                       )       **No. 93-191**
VS.                                    )
                                       )       **Appeal No.**
                                       )       **01-A-01-9704-CH-00170**
IRENE CAROL KLANSECK McCRAY,           )
                                       )
    Defendant/Appellee.                )

# O P I N I O N

This appeal seeks review of a post-divorce decree judgment entered by the Trial Court on December 6, 1996, finding the husband guilty of contempt, adjusting alimony and child support, determining the amount of unpaid arrearage of each, ordering monthly payments of the adjudicated arrearage and committing the husband to jail upon failure to pay any monthly installment required by the order. On August 1, 1997, this Court filed an opinion disposing of a previous appeal from an order entered by the Trial Court December 22, 1995. No application was filed for permission to appeal to the Supreme Court, and mandate was issued to the Trial Court. The August 1, 1997 judgment of this Court is now final.

The August 1, 1997, opinion of this Court read in pertinent part as follows:

> The record reveals that Brian McCray and Irene Klanseck were both born in Detroit Michigan; that they married in 1972 when they were both eighteen years old; that they became the parents of five sons and two daughters; that Mr. McCray worked at a General Motors auto plant; and that the wife also worked intermittently during the marriage in addition to taking care of home and family. In 1990 Brian McCray took a job at the Saturn plant in Spring Hill, and the family moved to Tennessee. Shortly thereafter their youngest child was diagnosed with cancer. He died in 1992.

> There had been a fair amount of domestic strife during the twenty-two years of the parties' marriage, including some incidents when the police had to be called. In March of 1993 an explosive dispute between the parties led Mr. McCray to leave the marital home, and his wife to file for an ex parte order of protection. On April 6, 1993, Mr. McCray filed his complaint for absolute divorce. Ms. McCray answered and

-2-

counterclaimed, accusing the petitioner of cruel and inhuman treatment and inappropriate marital conduct, and asking the court to grant her a divorce from bed and board. The counterclaim stated:

> "Defendant herein seeks a divorce from bed and board and opposes an absolute divorce from the bonds of matrimony; however, alternatively, in the discretion of the court, is entitled to an absolute divorce from the bonds of matrimony as expressly provided for in T.C.A. 36-4-102 in the event the Court finds and concludes that Defendant should not be granted a divorce from bed and board."

Following a hearing on May 12, 1993 the Petition for Order of Protection and the Complaint for Divorce were consolidated. The wife was granted custody of the children, with reasonable visitation for the husband. He was also ordered to pay child support pendente lite of $2,570 per month and spousel support of $930 per month.

The case came to trial on Friday, August 18, 1995. At that time, Mr. McCray was living with his girlfriend, Kelly McClarnon, who was four and a half months pregnant with his child, and Ms. McCray was getting ready to start nursing school at Columbia State Community College.

The proof at trial indicated that the loss of her youngest child had devastated Irene McCray emotionally, and that she had come under the care of David A. Burns, M.D. Her attorney introduced into evidence a letter from Dr. Burns that stated that he was treating her for Attention Deficit Hyperactivity Disorder as well as for depression, and that he has prescribed medication for her condition. Dr. Burns further stated:

> "... Mrs. McCray ... also suffers from a learning disability, and requires extra time and effort to progress and master concepts, as well as to adjust to change. Nearly every major change in her life has been accompanied by prolonged periods of decreased functioning, lasting up to six (6) months.
>
> "It is my fear that finalizing divorce at the same time she is to start nursing school would significantly decrease her chances at being successful in this demanding endeavor, which is very important to her being able to be self supportive, and to therefore be able to function as a divorced mother."

Mrs. McCray testified that she would be unable to start school on Monday if the court granted her a divorce on

Friday. On direct she responded to a question from her attorney as follows:

> Q. Now Ms. McCray, do you want your husband to come home?
>
> A. I want him -- he can stay with Kelly, and when I'm ready to give him his divorce, I'll come in and see you and sign the papers. I'm not ready right now. Emotionally I cannot handle it. I never said I wanted him to come home, I don't.

After hearing all the evidence, the court stated in an order filed December 22, 1995:

> This Court is convinced that the granting of an absolute divorce would devastate Ms. McCray emotionally and psychologically to the point that she will not be able to function, particularly in her efforts to begin a full-time registered nursing curriculum. Her testimony, her demeanor, her mannerisms in open Court, Mr. McCray's admissions to this effect, her parent's testimony, all compel the conclusion that the fear expressed by her physician in his letter admitted into evidence is well founded.

The court accordingly dismissed Mr. McCray's complaint for absolute divorce and granted Ms. McCray a divorce from bed and board.

We do not believe that when reconcilement between the parties is no longer possible either party is entitled to exercise a veto over the question of divorce. As our Supreme Court has said:

> "In a divorce action the desires of the parties, particularly the party without fault, are given consideration, but such do not control the action of the court."

*Abney v. Abney*, 433 S.W.2d 847 (Tenn. 1968).

However, having thoroughly reviewed the record, briefs and arguments of counsel, this court is not convinced that the trial court erred in refusing to grant Ms. McCray an absolute divorce under the unusual circumstances in existence at the time of trial. Moreover, neither *Linger* nor the statute, Tenn. Code Ann. § 36-4-102(b), overrides the basic discretion of the trial court to grant or deny a divorce in cases such as this.

-4-

Nonetheless, we note that the parties have now lived apart for more than three years, and that Tenn. Code Ann. § 36-4-102(b) sets out a ground for divorce as follows:

> The circuit, chancery or other such court specially empowered to grant divorces also has the power to grant absolute divorces to either party where there has been a final decree of divorce from bed and board, or of separate maintenance for more than two (2) years, upon a petition being filed by either party that sets forth the original decree for divorce from bed and board, or separate maintenance, and that the parties have not become reconciled. The court granting the absolute divorce shall make a final and complete adjudication of the support and property rights of the parties. However, nothing in this subsection shall preclude the divorce forum from granting an absolute divorce before the two (2) years has expired. (Emphasis added)

- - - -

Should Mr. McCray file a new petition, we see no obstacle to prevent the trial court from ordering an absolute divorce if it sees fit to do so.

## II. Child Support

The trial court acknowledged that based upon Mr. McCray's most recent income statement, the guidelines would require child support of $1,478 per month for four children, but it ordered him to pay $2,000 per month. The court justified its deviation from the guidelines by noting that Mr. McCray had earned more in previous years by working a substantial amount of overtime at the Saturn plant. The court also considered the fact that Mr. McCray had the economic benefit of living with Ms. McClarnon, who was also employed with Saturn.

Mr. McCray testified that overtime was no longer as available as it had been, because the productive capacity of the plant had been increased by the addition of a third shift, and Friday and Saturday work was no longer compensated at overtime rates. He stated that he was willing to do Sunday overtime work if that was available, but that a neck injury and subsequent disc surgery left him with a permanent restriction that limits the number of hours that he can work in any one day.

Ms. McCray's brother, Ken Klanseck, testified to the contrary that overtime was still freely available at Saturn. Mr. Klanseck works on the same shift as Brian McCray, but in a different area of the plant. The trial court characterized Mr. Klanseck's testimony as "the credible testimony in this record," but it is not altogether clear that the opportunities for

overtime in Mr. McCray's area of the plan are the same as in Mr. Klanseck's area. Further, the appellee did not challenge Mr. McCray's account of his injury. We also do not believe it was appropriate for the trial court to take Ms. McClarnon's income into account in setting child support.

We therefore reverse the trial court's award of child support and remand this case to enable the court to bring its order into conformity with the guidelines. Any amount in excess of the guidelines that Mr. McCray may have paid since the date of the order appealed from will be applied to his arrearages.

Mr. McCray has also argued that it was error for the trial court to award Ms. McCray support for the parties' seventeen year old son, Michael McCray, who has now reached his majority, but who was in the custody of the Juvenile Court at the time of these proceedings. According to Tenn. Code Ann. § 37-1-151 the parents may be liable for the expenses incurred by the State in maintaining custody of an unruly or delinquent child. Where a prior child support order exists, the state may claim the payments ordered for the support of that child. We therefore find that the trial court did not err, and we affirm its order in this respect.

### III. Alimony

Mr. McCray expressed a willingness to pay alimony "within reason" and suggested that any alimony terminate when Ms. McCray completes nursing school or after 36 months, whichever comes first. The trial court awarded Ms. McCray $930 per month in futuro. On appeal, Mr. McCray argues that the trial court erred in ordering rehabilitative alimony, which is of limited duration, and in setting an amount that is beyond his ability to pay.

Our legislature has expressed a preference for rehabilitative alimony over alimony in futuro whenever it is possible for the disadvantaged spouse to make him or herself economically independent. Tenn. Code Ann. § 36-6-101(d). Ms. McCray managed to work during her marriage, and she intends to earn her nursing certificate, which, if she is successful, will enable her to become self-supporting. We therefore agree that the trial court erred in not ordering modifiable rehabilitative alimony. However in view of Ms. McCray's learning disability, and other unusual circumstances which may prolong the normal period of rehabilitation, we believe that the alimony should be ordered for a period of ten years from the date of the divorce. Future modifications may be made upon the presentation of competent proof of changed circumstances. The question of future modifications is to remain within the control of the trial court.

In regard to the question of the appropriate amount of alimony, Tenn. Code Ann. § 35-5-101(d) also sets out the relevant factors for the court to consider in making its

determination. For the purposes of this case, the most important factors are the relative earning capacity of the parties; the duration of the marriage; the age, physical and mental condition of each party; and the relative fault of each party. All these factors suggest that a substantial award of alimony is warranted, and we affirm the amount determined by the trial court. We note that the economic hardship that Mr. McCray complains of will be somewhat alleviated by the reduction in his child support obligation discussed above.

### V. Attorney Fees

The trial court ordered Mr. McCray to pay attorney fees in the amount of $8,000 on behalf of Ms. McCray. Although taxing attorney fees as part of costs is contrary to public policy in most kinds of cases, such fees may be properly allowed in divorce cases as part of the alimony awarded. *Raskind v. Raskind*, 45 Tenn. App. 583, 325 S.W.2d 617 (1959). An award of attorney fees is appropriate in cases where the final decree does not provide the obligee with funds out of which counsel may be paid. *Harwell v. Harwell*, 612 S.W.2d 182 (Tenn. App. 1980).

In the present case, the division of marital property does not provide the wife with a source of funds from which to pay her attorney. Mr. McCray argues that he likewise does not have the resources to pay attorney fees, because he has no property of any value, and his entire net income is being used to pay alimony, child support and arrearages.

Since attorney fees are considered an award of alimony, the trial court should again consider the relevant factors in 36-5-101(d)(1) before making such an award. The first of these factors is "[t]he relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources."

We believe that for purposes of alimony, the support that Mr. McCray receives from Ms. McClarnon may be considered either as reducing his need or as a financial resource that falls in the category of "all other sources." We therefore do not believe that the trial court abused its discretion in awarding attorney fees to Ms. McCray.

The foregoing August 1, 1997, opinion of this Court, which disposed of the appeal from the December 22, 1995, judgment of the Trial Court became "the law of the case", *Ladd v. Honda Motor Co.*, Tenn. App. 1996, 939 S.W.2d 83, and will be dispositive of some issues in the present appeal.

The proceedings leading to the present appeal were as follows:

On June 17, 1996, the defendant-wife filed a "Motion for Adjudication of Contempt" which alleged that the husband was in arrears in payment of support payments and prayed that the husband "be adjudged in willful contempt and punished for such according to law and that defendant have judgment for all additional arrearage through the date of hearing."

On June 26, 1996, the husband moved the Court to reduce child support because one child had reached majority, because husband's income had diminished and because he did not have the ability to pay the amount of support ordered by the Court.

After a hearing on the foregoing motions, on October 16, 1996, the Trial Judge entered its judgment. Upon motion to alter or amend, on December 7, 1996, the Trial Judge entered an order as follows:

> It appears to the Court that the Plaintiff is in willful contempt of this Court's Order and should be punished accordingly. The Court further finds that a history of this case should be made a part of this Order to clarify the Court's ruling.
>
> These parties came to Maury County in order for the Plaintiff to work at Saturn Corporation. There were seven children born of this marriage, one of them died, and at the time of this divorce hearing, there were four minor child at home and two other children in college. The Defendant, Irene Carol McCray, has not worked outside the home, and the Plaintiff, Brian David McCray, left the marital home and moved into the home of his lover, who was then pregnant with his child and has given birth to this child. The Plaintiff filed for divorce on April 6, 1993, and the Defendant answered by asking the Court to dismiss the Plaintiff's divorce complaint. The Defendant, because of her religious beliefs, does not believe in divorce. The Court dismissed the Plaintiff's divorce complaint. The Court awarded the Defendant custody of the children and ordered child support in the amount of Two Thousand Dollars ($2,000.00) per month, maintenance for the Defendant wife of Nine Hundred Thirty Dollars ($930.00) and Three Hundred Twenty-five Dollars ($325.00) per month as payment on an arrearage.
>
> Since the filing of this divorce through October of 1996, the Plaintiff has accumulated an arrearage of Thirty-

One Thousand Six Hundred Twenty-One Dollars and Seventy-Seven Cents ($31,621.77) in child support and maintenance. He has agreed to pay Four Hundred Eighty-six Dollars ($486.00) per month to his girl friend for the support of their newborn child, and the girl friend is employed at Saturn where she earns Two Thousand Two Hundred Thirty-six Dollars and Seventy-Seven Cents ($2,236.77) twice each month. He has named one of the parties' adult children who lives with him as contingent beneficiary of a One Hundred Fifty Thousand Dollars ($150,000.00) life insurance policy he was ordered to maintain with the Defendant wife as beneficiary and has excluded the minor children as contingent beneficiary of a One Hundred Fifty Thousand Dollars ($150,000.00) life insurance policy he was ordered to maintain with the Defendant wife as beneficiary and has excluded the minor children as contingent beneficiaries. He received a Ten Thousand Dollars ($10,000.00) bonus in January, 1996 and yet paid only $23.81 toward the arrearage, i.e., for January he paid a total of $2,953.81 (excluding clerk's commission) to apply to arrearage. He claims to have suffered from depression and claims to be unable to work available overtime due to his neck and back. These claims are not supported by the credible evidence in this case. He has done very little that the Court ordered him to do.

Since the divorce hearing, one of the four minor children has reached majority and is in fact living with the Plaintiff, and he is entitled to have his child support adjusted accordingly. He also asks for a decrease in the maintenance payments to the Defendant.

IT IS, THEREFORE, ORDERED by the Court that the Plaintiff, Brian David McCray, be found to be in willful contempt of this Court's Order, and that he be sentenced to six (6) months in the Maury County Jail, or until such time as he purges himself of these arrearages. IT IS FURTHER ORDERED that this sentence be suspended provided the Plaintiff does not fail to comply with the further orders of this Court listed hereafter.

IT IS ORDERED that the Plaintiff's child support be set at One Thousand Five Hundred Eighty Dollars ($1,580.00) per month payable directly to the Defendant twice each month along with maintenance for the Defendant in the amount of Eight Hundred Dollars ($800.00) per month and a Two Hundred Twenty-Five Dollar ($225.00) per month payment on the arrearages, which the Court finds to be Thirty-one Thousand six Hundred Twenty-One Dollars and Seventy-Seven Cents ($31,621.77) through October, 1996 for a total monthly payment of Two Thousand Six Hundred Five Dollars ($2,605.00).

IT IS FURTHER ORDERED by the Court that in the event the Plaintiff misses one payment when due, upon application of Defendant, a mittimus shall issue for Plaintiff's incarceration in the Maury County Jail for a period of six (6)

months or until he purges himself of his contempt by paying all arrearages accruing since the trial of this cause, such sum to be stated in the mittimus. Alternatively, Plaintiff may place on file with the Clerk and Master a cash bond or surety bond, such surety bond to be approved by the Court, in the amount of Fourteen Thousand Dollars ($14,000.00), such bond and undertaking of the surety to be void and of no effect upon condition that Plaintiff comply with the orders of this Court set forth herein. Upon failure of Plaintiff to make a single payment, in full when due, Defendant may proceed against the cash bond or the surety to enforce and collect all arrearages accruing since the trial of this case.

On appeal, the appellant-husband presents four issues of which the first is:

I. Whether the Trial Court erred in requiring the appellant to pay child support in an amount that was in excess of the Tennessee child support guidelines?

This issue requires this Court to consider and apply the "law of the case" as declared in the previous opinion of this Court, to establish the income of the husband, and to review and revise the decision of the Trial Court in accordance with said opinion, the evidence in this record and the applicable guide lines.

## INCOME

The husband admits $4,800.00 income per month. The wife insists that his income should be considered the average of recent years. However, the husband testified that and the Trial Court found that his income had been involuntarily reduced by physical problems. The evidence does not preponderate against the finding of $4,800.00 per month as of the date of the hearing. Child support guidelines equate $4,800.00 gross income with $3,427.20 net income.

## NUMBER OF CHILDREN

The prior opinion of this Court found that three minor children were living with the wife and that the husband was also liable for the support of a fourth child in the custody of the State.

Thus, under the circumstances stated in said opinion, the husband was liable to his wife for the support of three children and to the State for the custody of the fourth child. However, it appears from this record that the fourth child is no longer in the custody of the State, but has been released into the custody of the husband. The record does not disclose the date of said release which must be determined on remand. It also appears that the husband has been ordered to pay $646.00 per month for the support of another child born out of wedlock. The custodian of said child is not before this Court in this appeal, and therefore the award of support to her by another court is not subject to review by this Court. However, it is to be considered in determining the net income of the husband for establishing the amount of child support. Thus, the net income of the husband for the purpose of fixing his liability to his wife for child support is reduced from $3,427.20 to $2,941.20, for which the prescribed support for three children is $1,199.00.

The foregoing child support should be effective as of the dates when the designated facts came into existence. These dates must be established and applied on remand. From the present record, the total liability of the husband appears to be $1,199.00 to his wife and $646.00 to his live-in companion which amounts to $1,845.00 total child support.

Husband's second and third issues are:

> II. Whether the Trial Court erred in finding appellant in willful contempt of court when he did not have the ability to meet his support obligations?

> III. Whether the Trial Court erred in ordering the appellant to pay alimony of eight hundred ($800.00) dollars per month to the appellee when the appellant did not have the ability to pay the amount of alimony awarded?

The third issue must be examined before reaching the second issue.

In our prior opinion we affirmed an award of alimony to the wife of $930.00 per month for a period of ten years. We were careful to point out that the amount should remain within the trial court's control, but our examination of the record in this case does not reveal any substantial

change of circumstances affecting the obligation to pay alimony since the last hearing. Therefore, we think the $930.00 award is the law of the case and the award should remain at that level until circumstances dictate a change.

## ABILITY TO PAY

Husband admits gross income of $4,800.00 per month. He also admits that he resides with the mother of the child born out of wedlock who is employed in the same industry as the husband. T.C.A. § 36-5-101(a)(2)(B) provides that where a person receiving alimony in futuro lives with a third person, there is a presumption that the third person is contributing to the support of the recipient of the alimony. Although the statute does not expressly apply to the circumstances of the present case, it is persuasive that the living arrangements of the husband should be considered in respect to the amount of his income he needs for his personal expenses.

The alimony of $930.00 and child support of $1,845.00 set out herein aggregates $2,775.00. The $325.00 arrearage payment increases husband's total monthly liability to $3,100.00. The $4,800.00 gross income of the husband is subject to reduction for employment taxes, but not necessarily to the extent allowed by the guide lines, so that the husband cannot effectively claim that he has only $3,427.00 income to pay total alimony, support and arrearage of $3,100.00. This record does not establish the exact amount of his net income after taxes, nor is the record complete regarding annual bonuses. The receipt of annual bonus should be examined on remand. In any event, should it be found that $4,800 is the correct monthly income of the husband, the amount of his income available for his personal expenses will undoubtedly be more than $327.00, due to the fact that he lives with his paramour, to whom he is paying $646.00 in child support, and who has a substantial income of her own. It is difficult for us to see how the husband can claim a hardship when he is paying child support for a child with whom he lives in an amount more than half of what he pays for the three children living with their

mother. This court does not consider that a revision of the husband's $325.00 arrearage payments is justified at this time.

The judgment of the Trial Court is modified to restore to $930.00 the monthly alimony to the wife and to change the award of child support to her to $1,199.00. The parties agree that this cause must be remanded for a new calculation of the arrearage because the arrearage was calculated by the trial court before we issued our prior opinion reducing the amount of monthly support. We also held that any overpayments the husband had made in the meantime should be applied to the arrearage.

## CONTEMPT

The trial court found the husband to be in willful contempt and sentenced him to six months in jail, or until such time as he purged himself of the combined total of $31,621.77 of arrearages in child support and alimony. The court suspended the sentence conditioned on the husband's compliance with the court's adjusted child support and alimony payments.

Tenn. Code Ann. § 29-9-102, et seq. provides for the powers of the courts regarding contempt. *Black v. Blount*, 938 S.W.2d 394 (Tenn. 1996). Our Supreme Court has described this essential power of the courts as follows:

> Contempts may be either criminal or civil in nature. Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 911 (1964). If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket ..." *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 127, 191 S.W. 974 (1917) (internal citations and quotations omitted); *see also State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995).

-13-

> Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. *Daugherty*, 137 Tenn. at 127, 191 S.W. at 974; *Gunn v. Southern Bell Tel. & Tel. Co.*, 201 Tenn. 38, 41-42, 296 S.W.2d 843, 844-45 (1956). Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. *Id.* While criminal contempt may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." *Daugherty*, 191 S.W. at 974 (internal citations and quotations omitted). In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubts. *Robinson*, 377 S.W.2d at 912.

*Id.* at 398.

We are not certain what to call the lower court's contempt order. It has aspects of both civil and criminal contempt. It appears to be more civil, however, because it appears to be designed to induce the husband to perform some act or acts for the benefit of the wife. Assuming that we are correct about that, an essential element of civil contempt is the ability to perform the act ordered by the court. *State ex rel. Wright v. Upchurch*, 194 Tenn. 657, 254 S.W.2d 748 (1953); *Gossett v. Gossett*, 241 S.W.2d 934 (Tenn. App. 1951). In this case, that act is the payment of the entire arrearage of $31,621.77. There is no finding in the record that the husband has that ability. In addition, since both parties agree that the amount of the arrearages, if any, must be re-calculated in light of the adjustments made in our prior opinion, it would be impossible at this point to decide what it would take for the husband to purge himself of contempt. So, the sentence cannot stand as civil contempt.

If the contempt is criminal, we are also of the opinion that the sentence must be reversed. For criminal contempt, guilt must be proved beyond a reasonable doubt. *Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908 (Tenn. 1964). The general power of a court of record to punish for contempt is limited to ten days in jail and/or a fifty dollar fine. Tenn. Code Ann. § 29-9-103. In child support cases the punishment may amount to as much as six months in jail. Tenn. Code Ann. § 36-5-104.

We already have held that the amount of the arrearage, if any, must be re-calculated. Without a record of whether there is an arrearage in child support or alimony, or both, it is impossible to decide whether the six month penalty for violating child support orders applies to the husband. Therefore, we reverse the sentence for contempt for any past violations of the court's orders. A determination of any future violations must be made in any event and the parties should have a fresh start.

The appellant-husband's fourth and final issue is:

IV. Whether the Trial Court erred in determining the amount of support arrearage when there was no evidence offered to the court that would enable it to calculate the amount of support arrearage?

At the hearing, husband admitted that he was ordered to pay $23,924.32 support of which he claims that he paid $15,748.72 leaving an unspecified unpaid balance of arrearage to be added to a previously ascertained but unspecified amount of previously adjudged arrearage. Upon remand, the total amount of support ordered, the total amount paid and the total arrearage should be accurately ascertained and made the judgment of the Court, taking into account the adjustments made on appeal by this court.

Husband also claims credit for $325.00 per month clerk's fee made unnecessary by an agreement of the parties to dispense with the Clerk's services. However, the amount saved thereby is not shown. Upon remand, the amount thus saved should be ascertained and included and considered in the ascertainment of the amount of arrearage.

The October 16, 1996, judgment of the Trial Court is modified as follows:

1. As of October 16, 1996, the liability of appellant is based upon a net income of $4,800 per month. This record does not satisfactorily establish the effective dates of the number of children from time to time. Upon remand, the Trial Court will hear further evidence and

adjudicate the effective dates of liability, that is, the date on which Michael began to live with his father and the date of birth of the child of another mother. The Trial Court will then compute the total amount of child support due from appellant.

2.      The $930 per month alimony set by the Trial court on December 22, 1995, and affirmed by this Court on August 1, 1997, will be continued in effect until revision is justified hereafter by proof of sufficient change in circumstances.

3.      The judgment of contempt is vacated.

4.      On remand, the Trial Court will determine whether to allow legal expenses of this appeal, and how much.

As modified, the October 16, 1996, judgment is affirmed. Costs of this appeal are taxed against the appellant and his surety. The cause is remanded to the Trial Court for further proceedings in conformity with this opinion.

## REVERSED IN PART,
## MODIFIED AND AFFIRMED IN PART,
## AND REMANDED.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE

-16-

# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

BRIAN DAVID McCRAY,        )

      Plaintiff/Appellant.    )    Maury Chancery

                              )    No. 93-191

VS.                        )

                              )    Appeal No.

IRENE CAROL KLANSECK McCRAY,    )    01A01-9704-CH-00170

                              )

      Defendant/Appellee.    )

**FILED**

January 9, 1998

Cecil W. Crowson
Appellate Court Clerk

## O R D E R

The appellee has filed a respectful petition to rehear which has been duly considered.  The mathematical error in quoting of the record and other matters mentioned in the petition are insufficient to alter the decision of this Court.

The petition to rehear is respectfully denied.

ENTER _____

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE