IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2000 Session

## NIGEL M. FONTENOT v. CATHERINE FONTENOT

**Appeal from the Chancery Court for Wilson County**
**No. 99015     C. K. Smith, Chancellor**

—

**No. M1999-02322-COA-R3-CV - Filed December 13, 2000**

—

This appeal arises from the trial court's division of marital property and martial debt, award of alimony, and award of attorney's fees. After reviewing the record and applicable law, the trial court's judgment is affirmed as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Reversed in Part; and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Fred C. Dance, Franklin, Tennessee, for the appellant, Catherine Fontenot.

Vicky V. Klein, Madison, Tennessee, for the appellee, Nigel M. Fontenot.

**OPINION**

**I.**

The parties were divorced on November 12, 1999 after six years of marriage. There were no children born of the marriage. When the parties married, the appellee was employed as a physician and the appellant was a program director for Jenny Craig. The appellant earned approximately $18,000.00 per year at Jenny Craig and was working toward a management position. Approximately three or four weeks after the parties' married, the appellant quit her job and became a full-time homemaker for the duration of the marriage. However, the appellant did work in the appellee's office for a short period of time. The appellee's monthly income during the marriage ranged from $15,000.00 to $20,000.00. When the parties married, the appellee owned a car with $5,000.00 equity and minimal furniture. The appellant owned a 1989 Grand Am and some furniture. In addition, the appellee had $60,000.00 - 80,000.00 in student loans outstanding and a $50,000.00

business loan. The appellant had a $6,000.00 student loan. By the time the parties divorced, the appellant's student loan was paid in full but the appellee was still making payments on his loans.

After an evidentiary hearing on September 30, 1999, the trial court found that the appellee's current monthly income was $18,700.00 per month. The trial court further found that the appellant has a degree in dental hygiene but is not licensed because she has not passed the licensing exam. Although she was unemployed, the trial court found that she was capable of working and earning $12,000.00 to $14,000.00 per year as a salesperson or a dental assistant. With regard to assets, the trial court found that the parties had acquired a house with a present value of $210,000.00 with a first and second mortgage on the house totaling $180,000.00. The trial court further found that

> They own time-shares valued at $26,000.00, with an indebtedness against it in the amount of $20,698. Parties own a Mercedes valued at $40,000, with a $43,991.49 indebtedness on it. The parties own a Mitsubishi automobile with the value of 40,000, with an indebtedness against it 47,000.

> Parties own a 401(k) that was totally acquired during the marriage valued at $45,199.67. There's a brokerage account in the amount of $2,647.44 that the parties own.

> They own household furnishings, and equipment, tools, et cetera. Depending on whose values you place on this, the husband valued all those things at $27,414, the wife $41,729. The parties also acquired a great deal of indebtedness during their marriage: first mortgage on the home, $152,428.81; a second mortgage on the home $27,533.80; an IRS indebtedness for year of 1998, $25,000; credit card indebtedness, balance at $46,000; wife's attorney fee at $9,813; husband's attorney fee $6,412.40.

> They've lived a very high lifestyle, expensive lifestyle, they've taken several vacations a year, just used their credit cards wildy. Both of them have charged on it and bought some things I feel like was [sic] a waste. But neither party tried to conserve the marital property, but continued to spend as if the money was unlimited.

The trial court went on to find that the appellant had made substantial contributions to the marriage as a homemaker and that this was a marriage of relatively short duration. The trial court, in spite of appellant's claim that it was a birthday present, found that the Mercedes was joint property titled in both of the parties' names. The trial court stated that each party was relatively young but that the appellee had the capability of earning 10 to 25 times more than the appellant.

After making these findings, the trial court set out the parties' items of separate property. The trial court then gave the appellant the parties' marital residence with a net equity of $30,000. The court awarded the appellant sixty percent of the time shares with an equity of $3,180.66. The appellant was awarded the Mercedes as well as the responsibility for the balance owed on the car, a negative value of $3,991.00. The trial court then awarded the appellant a couch valued at

$8,000.00 and a mirror worth $400.00. In all, the appellant received $21,855.00 worth of household items. The appellant also received the 330,000 honor points the parties had accumulated with Marriott.

The trial court awarded the appellee the 401(k) valued at $45,198.92 and the Mitsubishi automobile having a negative value of $7,000. The appellee received the remaining forty percent of the equity in the time shares and various household items that the trial court valued at $19,244.00. The appellee was also awarded the 77,000 air miles the parties had accumulated.

The trial court ordered that the appellant pay forty percent of the $46,000.00 credit card indebtedness and that the appellee pay sixty percent. The appellee was further ordered to pay the entire balance of $25,000.00 owed to the IRS for the parties' 1998 taxes and any taxes owed for 1999. The court ordered him to pay his own attorney's fees of $6,412.44 and the appellant to pay her own attorney's fees of $9,813.00. After calculating the appellant's debts at $32,204.00 and assets of $55,035.66, the trial court found that she had a net of $22,831.66. The appellee's assets were valued at $69,170.80 and debts at $66,012.44 with a net of only $3,158.36.

After a hearing on October 11, 1999, the trial court found that the appellant was entitled to a divorce on the basis of the appellee's acts of adultery that occurred after he moved out of the marital residence. The trial court then added up the appellee's expenses per month minus the appellant's ordered obligations regarding the parties' debt and found that the appellee had $9,717.00 in expenses per month. As the trial court determined that the appellee had $13,500.00 in net income per month, the court found that he had $3,783.00 in expendable income. That amount did not take into account all of the appellee's obligations to the IRS. The trial court then looked at the appellant's listed expenses and found that there was "at least a couple of $1000 worth of fat in here that . . . could go." The trial court then considered the parties' situation in terms of the division of property where the appellee netted only $3,158.36 and the appellant netted $22,831.66, and the trial court ordered that the appellee pay the appellant rehabilitative alimony of $3,500.00 per month for a period of 48 months. The trial court specifically found that the appellant was an educated woman that could be rehabilitated. The trial court stated that she "is probably the exact type of person that [the rehabilitative alimony] statute was designed to rehabilitate."

The trial court then addressed the issue of attorney's fees incurred since the hearing in September. The appellee was again ordered to pay his own attorney's fees. The court found that the appellant had incurred $5,900.00 in fees since the last hearing and ordered the appellee to pay all but $2,500.00 of that amount. The $2,500.00 figure resulted from a modification of the previous order regarding the credit card debt. In an effort to make the payments of such debts easier, the appellant was ordered to pay off the balance of $16,531.71 on one of the parties' MBNA credit cards. As her forty percent share of the credit card debt amounted to $18,400.00, the trial court made up the difference by ordering the appellant to pay $2,500.00 of her own attorney's fees. The appellee was then ordered to pay off the balance of the two remaining credit cards of $23,391.73 and $7,717.01. The trial court reasoned that ordering the appellant to pay off one credit card and the appellee to pay

off the rest of the cards would be easier than trying to split the monthly payments of each credit card 60% / 40%.

The appellant's appeal takes issue with several elements of the decree. These are (1) the trial court's division of martial property and allocation of marital debt, (2) the trial court's award of rehabilitative alimony of $3,500.00 per month for 48 months, (3) the trial court's refusal to require the appellee to pay all of the appellant's attorney's fees, and (4) the trial court's failure to order the appellee to repay an $8,000.00 loan he borrowed after the parties separated and added to the second mortgage on the marital residence.

We will discuss each of these issues in turn.

## II.
### THE MARITAL PROPERTY

The appellant first takes issue with the trial court's division of marital property and allocation of marital debt.

A trial court has wide discretion concerning the manner in which it divides marital property. *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn. Ct. App. 1987); *Pennington v. Pennington*, 592 S.W.2d 576 (Tenn. Ct. App. 1979). Additionally, Tenn. Code Ann. § 36-4-121 does not mandate an equal division of the marital estate but requires an equitable division considering the factors in the statute. *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988). In making an equitable division, the trial court must consider the factors set out in Tenn. Code Ann. § 36-4-121(c) which include:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

In this case, the parties were married only six years. We agree with the trial court's determination that this was a marriage of relatively short duration. We further note that the appellee was a practicing doctor when the parties married and that the appellant was working toward a management position with Jenny Craig. Neither party entered into the marriage with substantial assets. However, as the trial court found, the appellee has a much greater earning capacity than the appellant. The evidence established that her earning capacity at the time of the parties' marriage was approximately $18,000.00 a year whereas the appellee has an earning capacity of $18,700.00 per month. Rule 13(d) of the Tennessee Rules of Appellate Procedure provides that: "[R]eview of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."

With one exception we think the trial judge correctly divided the marital property. The appellant contends that the trial court erred in failing to require the appellee to repay $8,000.00 that he borrowed on the second mortgage of the marital residence after the parties separated. We note that the marital residence and the accompanying mortgage payments were awarded to the appellant. The record indicates that the $8,000.00 was used by the appellee toward the purchase of a new car after the parties separated. The trial court did not specifically address the $8,000.00 loan when dividing the marital property and setting alimony.

This Court has previously held that marital debts are those debts incurred during the marriage for the joint benefit of the parties or those directly traceable to the acquisition of marital property. *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). When practicable, the marital debts should follow the assets that the debts purchased. *Id.* at 773. However, one spouse should not be held responsible for debts the other spouse incurs between the separation and divorce unless the debts were for a marital purpose or for the joint benefit of the parties. *Goodman v. Goodman*, No. 02A01-9809-CV-00255, Shelby County (Tenn. Ct. App. filed August 9, 1999, at Jackson). The appellant has never driven or in any way used the car purchased with these funds nor did she agree to its purchase. Therefore, the appellant should not be held responsible for such debt. We therefore modify the trial court's final order to require the appellee to pay the appellant $8,000.00 for payment on the second mortgage of the marital residence.

## III.
### ALIMONY

We next address the appellant's contention that the trial court erred in its award of rehabilitative alimony. The trial court awarded the appellant $3,500.00 per month for a period of 48 months. At the time of the divorce, the appellant's expense statement listed monthly expenses

of $9,318.25 per month which included monthly payments of $950.00 on a Mercedes automobile, $350.00 in beauty parlor and cosmetic expenses, $250.00 in charitable contributions to a church, and $600.00 for clothing with an additional $100.00 for dry cleaning and laundry. The trial court found the appellant's expenses excessive and awarded her only $3,500.00 per month. The trial court specifically stated that this was an award of rehabilitative alimony and that the appellant was the exact type of person the statute for rehabilitative alimony was designed to rehabilitate.

We first note that the trial court is vested with great latitude when making decisions with regard to alimony. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); *Raskind v. Raskind*, 325 S.W.2d 617, 622 (Tenn. Ct. App. 1959). Tenn. Code Ann. § 36-5-101(d) sets out the relevant factors for the court to consider in making its determination. For the purposes of this case, the most important factors are the relative earning capacity of the parties; the duration of the marriage; the age, physical and mental condition of each party; the standard of living established by the parties during their marriage; and the relative fault of each party. Tenn. Code Ann. § 36-5-101(d) (Supp. 1999). However, this Court has consistently held that the most important factors in setting the amount of alimony are the obligee's need and the obligor's ability to pay. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Campanali v. Campanali*, 695 S.W.2d 193, 197 (Tenn. Ct. App. 1985); *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn. Ct. App. 1984); *Lancaster*, 671 S.W.2d at 503.

The trial court determined that the appellee could only afford to pay $3,500.00 per month after his monthly expenses were paid. These expenses included the majority of the parties' debt incurred during the course of the marriage. In addition, the trial court found that the appellant's expenses were excessive. The evidence does not preponderate against the trial court's findings. The appellant admitted that before the marriage she was pursuing a management position with Jenny Craig. The appellant also already has a dental hygienist degree but has failed to pass the exam required to acquire a license. We believe that the appellant is entitled to rehabilitative alimony while she adjusts her life style to a post-divorce status. We are of the opinion that $3,500.00 in rehabilitative alimony until she reaches that status is sufficient.

The next question we must address, then, is how long the rehabilitative support should be paid. The same factors we considered in arriving at the proper amount of support are to be considered here. *See* Tenn. Code Ann. § 36-5-101(d). As we have noted, the duration of the marriage is one of the statutory factors, and we are required to consider the tangible and intangible contributions of each party to the marriage. Tenn. Code Ann. § 36-5-101(d)(5). In marriages of short duration rehabilitative support may be denied altogether where the spouse seeking support has contributed little to the marriage. *Crain v. Crain*, 925 S.W.2d 232 (Tenn. Ct. App. 1996).

The courts have not dealt with the question of the length of rehabilitative support in many reported cases. In *Self v. Self*, the court chose a period of forty-eight months, "to allow her to be self supporting and obtain a Bachelor's Degree in a field of her choosing." 861 S.W.2d 360 (Tenn. 1993). In *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996), we looked only at the amount and not the duration. In *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998), we recognized

that, due to the limited resources available in most divorces, the courts must be satisfied with awarding "closing in money," which would allow the disadvantaged spouse to return as closely as possible to his/her pre-divorce lifestyle.

We think that the award of rehabilitative alimony for forty-eight months is generous, but given the trial judge's discretion in these matters, *Garfinkle v. Garfinkle*, 945 S.W.2d 744 (Tenn. Ct. App. 1996), we cannot say that the award was an abuse of that discretion.

## IV.
### ATTORNEY'S FEES

We next address the issue of attorney's fees. The appellant takes issue with the trial court's refusal to order the appellee to pay the entire amount of her attorney's fees rather than a portion of the fees. In divorce actions, the trial court is vested with wide discretion in the allocation of attorney's fees. *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987). An award of attorney's fees is appropriate in cases where the final decree does not provide the obligee with funds out of which counsel may be paid or where payment of those expenses would require depletion of other assets. *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980); *see also Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994)*; Luna v. Luna*, 718 S.W.2d 673 (Tenn. Ct. App. 1986) (holding that an award of attorney fees may be justified in order to avoid requiring the spouse to deplete her source of income).

We note that the appellant has incurred attorney's fees in the amount of $18,221.34. However, the appellee has already paid $2,500.00 of this fee as the appellant's retainer. At the end of the second hearing, the appellant had $15,721.34 remaining in attorney's fees. The trial court ordered the appellee to pay $3,400.00 of this amount.[1] This leaves the appellant with $12,321.34 in attorney's fees. As attorney fees are considered an award of alimony, the trial court should consider the relevant factors set out in Tenn. Code Ann. § 36-5-101(d) before making such an award. *Storey v. Storey*, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992); *see also Raskind*, 325 S.W.2d at 617.

Under the ruling of the trial court, the appellant will receive the $30,000.00 equity in the marital residence, the $3,180.66 of equity in the parties' timeshares, and household items with a value of $21,855.00. Taking into account both the property settlement and the relative income levels

---

[1] The trial court ordered that the appellee pay $3,400.00 of the $5,900.00 in attorney's fees incurred by the appellant between the September 30, 1999 hearing and the October 11, 1999 hearing. However, as explained earlier in this opinion, the appellee would have been ordered to pay the entire $5,900.00 but for the trial court's rearrangement of the credit card debt. The trial court originally ordered that the parties split the entire amount of credit card debt 60%/40%. However, recognizing the problems that could occur if the parties were made to split each monthly payment on each credit card, the trial court ordered the appellant to pay the balance of one card and the appellee to pay the balance of the others. This would lead to the appellee paying more than 60% of the credit card debt. In order to make sure the appellant was responsible for an amount equal to 40% of the credit card debt, the trial court ordered that she pay $2,500.00 of the $5,900.00 in these attorney's fees.

of the parties, it appears to us that the appellant has been provided with a sufficient source of funds from which to pay the rest of her attorney's fees. We therefore affirm the trial judge in this respect.

## V.

The order of the trial court is modified as indicated herein and otherwise affirmed. Remand this cause to the Chancery Court for Wilson County for further proceedings consistent with this opinion. Tax the costs on appeal equally between the appellant and appellee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.