# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 4, 2003 Session

## MORGAN SUSANNE FOXX v. STEVEN C. BOLDEN

**Appeal from the Circuit Court for Blount County**
No. E-18339     W. Dale Young, Judge

### FILED FEBRUARY 12, 2004

### No. E2002-02831-COA-R3-CV

---

Morgan Susanne Foxx ("Wife") sued Steven C. Bolden ("Husband") for a divorce. After a lengthy trial, the Trial Court granted the parties a divorce, divided the marital property, and awarded Husband $25,000 in attorney fees. Wife appeals claiming, among other things, that the Trial Court erred when it failed to classify any of Husband's TVA funded retirement pension as marital property and equitably distribute it. Wife also claims the award of attorney fees to Husband was an abuse of discretion. We agree with Wife regarding the pension and, therefore, vacate the judgment as to the marital property division and remand this case to the Trial Court to determine how much of Husband's TVA funded retirement pension is marital property and to make an equitable distribution of all the marital property, including this additional asset. We likewise vacate the award of attorney fees to Husband since the propriety of that award may be affected by the marital property distribution. We affirm the granting of the divorce.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit
Court Affirmed in Part and Vacated in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

John M. Foley, Knoxville, Tennessee, for the Appellant Morgan Susanne Foxx.

Martha Meares and Laura Jane Webb, Maryville, Tennessee, for the Appellee Steven C. Bolden.

# OPINION

## Background

This divorce case began when Wife filed a complaint seeking a divorce from Husband after almost fifteen years of marriage. Wife alleged Husband was guilty of inappropriate marital conduct or, in the alternative, that irreconcilable differences had arisen between the parties. Husband filed a counterclaim asserting it was Wife who had engaged in inappropriate marital conduct, although Husband admitted irreconcilable differences had arisen.

The trial took seven days and Wife raises five issues on appeal. The first three issues concern the Trial Court's division of marital assets. More specifically, Wife claims the overall distribution of marital assets is inequitable. With regard to specifics of the property division, Wife challenges the manner in which Husband's pension and the marital residence were distributed. The other two issues involve attorney fees. The Trial Court awarded Husband $25,000 in attorney fees. Wife claims this was an abuse of discretion, and further that she is entitled to costs and attorney fees incurred on this appeal. We will discuss only those facts which impact these issues on appeal.

Husband currently is 54 years old, has a high school education, and is retired from the Tennessee Valley Authority ("TVA"). Although retired, Husband has started a graphic design business which, by the date of trial, had not shown a profit. Wife is currently 47 years of age and is employed as a geologist by the United States Department of Interior, Office of Surface Mining, earning an annual salary in excess of $70,000. Wife has a college education and also is licensed to sell real estate. There were no children born of this marriage.

Husband retired from TVA after a total of approximately twenty-nine years of service to the federal government, which includes almost two years of military service. The parties were married for roughly fifteen of these twenty-nine years. One portion of Husband's retirement is an annuity ("Annuity") which is funded from Husband's contributions. At the time the parties were married, Husband already had contributed $6,878.17 to the Annuity and its total value was $10,223.82. By May of 1999, Husband had contributed a total of $22,020.96 and the value of the Annuity was $65,400.91. In addition to the Annuity portion of Husband's retirement plan, there is a separate monthly pension benefit ("Pension") which is funded solely by TVA and is based on Husband's years of service and earnings. The monthly benefit received by Husband from the Annuity is $454 and the monthly benefit received from the Pension is $1,179, resulting in a total combined monthly retirement benefit of $1,633.00.[1]

---

[1] Husband elected a Level Income Plan when he retired. Because of this election he will receive an additional amount of $322 each month until age 62. However, these additional funds are considered an advance. Once Husband reaches age 62 and he begins receiving social security retirement benefits, his Pension from TVA will be reduced and the Pension will collect back the money that was advanced. The net result will be a level income before and after age 62.

When Husband was in the process of retiring, he was presented with four different retirement plan options. The first option provided for no survivor benefits other than distribution of the remaining funds in the Annuity. The second, third, and fourth options provided a survivor benefit to Husband's designated beneficiary. With all three of the survivor options, benefits are payable to the beneficiary only if the beneficiary is still living after Husband dies. Under the second option, Husband's beneficiary would receive 100% of his monthly benefit (i.e. $1,633) for the remainder of the beneficiary's life. The third option provided survivor benefits equal to 50% of Husband's monthly benefit. The fourth option allowed Husband to select a particular fraction of his monthly benefit he wanted the beneficiary to receive, such as one-third or three-fourths. Husband chose the second option and designated Wife as his beneficiary. With this designation, if Wife is still living when Husband dies, she will receive $1,633 per month for the remainder of her life. Husband designated Wife as his beneficiary seven months before Wife filed for divorce. Husband now cannot change the beneficiary designation. In order to pay for Wife's survivor benefit, Husband's monthly retirement benefits were reduced by $274, from $1,907 to $1,633 per month.

The Trial Court heard testimony from Robert Vaughn ("Vaughn"), the Manager of Retirement Operations at TVA. Vaughn was shown a document sent to Husband from TVA which states, among other things, that the "estimated present value of [Husband's] TVA funded benefits is $274,530." According to Vaughn:

> [T]hat value is used to provide – or is used in calculating tax exclusion if an employee elects an annuity withdrawal. If [Husband] had elected to withdraw his sixty-five thousand dollars, he would have used this value to determine the amount that was excluded for federal income taxes. This amount is for that sole purpose only. There is no lump sum available to [Husband] because of this amount. As a matter of fact, the T.V.A. funded benefit can only be taken monthly.

Vaughn testified that Husband will receive his monthly pension regardless of how long he lives, whether that is two years or many years. Once Husband dies, the benefits to Husband stop and Wife, if she is still alive, then receives the monthly benefit for as long as she lives. According to Vaughn, while TVA will pay the Pension benefit each month, TVA does not actually have an account containing $274,530 or any funds specifically designated to pay this monthly benefit. Vaughn stated that no one from TVA has calculated the present value of Husband's retirement benefits which accumulated from the date of the marriage to the date of trial. Although not entirely clear from the record, Vaughn apparently testified the $274,530 figure does not

accurately reflect the present day value of the Pension. According to Vaughn, TVA does not "provide figures on the values of anybody that's retiring."[2]

Kenneth Porter ("Porter"), a certified public accountant was called as an expert witness by Husband. Porter testified to the present day value of the reduction in Husband's retirement benefit resulting from Husband's selecting the survivor benefit to Wife, thereby reducing Husband's monthly benefit by $274. According to Porter, the present day value of the reduction in benefits to Husband is from $35,882 to $52,166, depending on the assumed interest rate.

After the trial was completed, the Trial Court issued Findings of Fact which later were incorporated into its Final Order. The Trial Court stated that the "parties were awarded an absolute divorce on the grounds of inappropriate marital conduct …." With regard to Husband's retirement benefits, and as pertinent to this appeal, the Trial Court stated:

> [Wife] has consumed hours of testimony on the issue of [Husband's] retirement plan. She claims it has a value in excess of a quarter of a million dollars. She refuses to acknowledge that the survivors benefits [that] are included in this retirement plan are of any value. She fails to accept the fact that this asset, no matter what its value, was half (½) acquired before she ever married [Husband]. She holds steadfast to her erroneous positions and refuses to accept the testimony of experts in evaluating retirement plans.
>
> * * * *
>
> The Wife's figure of two hundred seventy four thousand five hundred thirty ($274,530.00) for the Husband's total pension program is erroneous. Mr. Vaughn, from TVA, defined why that figure was suggested to [Husband] when sending his options to him. He stated, "that figure … is used in calculating tax exclusion if an employee elects an annuity withdrawal. If [Husband] had elected to withdraw his $65,000.00 he would have used this amount that was excluded for Federal Income Taxes. This amount is for that sole purpose. There is no lump sum available to [Husband] because of this amount." In fact, Mr. Vaughn confirmed that no one from TVA has put a present value on the [Husband's] retirement.

Prior to issuing its Final Order, the Trial Court instructed the parties to file final arguments as well as proposed findings of fact and conclusions of law. Husband claimed in his

---

[2] In an affidavit filed with the Trial Court prior to trial Vaughn stated the TVA Retirement System "does not provide present value calculations of TVA-funded benefits due to the subjective nature of discount factors used in such calculations."

proposed findings that $32,500 of the total $65,400.91 contained in the Annuity was marital property subject to an equitable distribution. In its Final Order, the Trial Court accepted Husband's proposal and awarded both parties one-half of $32,500, or $16,250 each. With regard to the Pension, the Trial Court, again accepting Husband's proposal, stated only that the Pension was not subject to a Qualified Domestic Relations Order ("QDRO"), apparently assigning no value to the Pension. With regard to Wife's survivor benefit, the Trial Court accepted Husband's proposed value and concluded this benefit had a present day value to Wife of $43,000. The Trial Court awarded Husband all of the equity in the marital residence totaling $132,000. Wife was awarded her entire thrift account valued at $139,400. All in all, after assigning monetary values to certain property when the parties could not otherwise agree, the Trial Court awarded Wife approximately 56% and Husband the remaining 44% of the marital property as valued by the Trial Court.

The Trial Court also awarded Husband $25,000 in attorney fees. The basis for this award is set forth in the Trial Court's Findings of Fact. Specifically, the Trial Court stated:

> It is undisputed in the record that [Wife] has threatened and promised to prolong and exacerbate these proceedings: she vowed "to bankrupt him (Defendant) with a divorce…." One of the factors which the Court must consider is fault. Clearly from the proof, [Wife] had planned and plotted this divorce. At best, she had an inappropriate relationship with the fifteen (15) year old foster child. The Court finds that [Wife] and the foster child held many "private meetings" in the child's bedroom, there was inappropriate touching, the letters introduced into evidence from [Wife] to the foster child, the trip to Asheville at Christmas, the fact that [Wife] furnished the young boy with Playboy magazines, and last but not least, the video camera in the parties' bedroom which resulted in a naked video of Plaintiff being discovered in the child's possession.[3]

> In addition to the element of fault, this case was prolonged and drawn out by [Wife], resulting in some eight (8) separate hearings, … [and Husband's] attorney fees are in excess of $32,000.00.

Wife appeals the judgment of the Trial Court. As noted previously, Wife challenges the manner in which Husband's pension and the marital residence were distributed, as well as the overall distribution of marital property which she claims is inequitable. Wife also challenges the Trial Court's award of $25,000 in attorney fees to Husband and further claims she is entitled to an award of attorney fees incurred on appeal.

---

[3] Wife testified she installed the hidden camera in the bedroom hoping to videotape Husband and their maid, whom Wife believed were having an illicit relationship. Wife succeeded in videotaping herself naked and this tape ended up in the possession of the minor foster child.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Marital property is defined by statute as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce...." Tenn. Code Ann. § 36-4-121(b)(1)(A). "Marital property" includes:

> income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B).

When dividing marital property, the many factors to be considered by a trial court in making an equitable distribution are set forth in Tenn. Code Ann. § 36-4-121(c), and include, *inter alia*, age, physical and mental health, vocational skills, employability, the contribution of a party to the marriage as homemaker, the contribution of each party to the acquisition or dissipation of marital or separate property, etc. A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

When valuing property, including a pension, a trial court's choice of which method to use to value that property remains in the sound discretion of the trial court after considering all relevant factors and circumstances. *Cohen v. Cohen*, 937 S.W.2d 823, 831-32 (Tenn. 1996). The parties are responsible for proposing the value of marital property, not the trial court. The value of a marital asset is determined by considering all relevant evidence regarding its value and the trial court is free to place a value on a marital asset within the range of evidence submitted. *See Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993); *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987).

In concluding that $32,500 of the total value of the Annuity constituted marital property, the Trial Court relied on Husband's testimony. Likewise, when determining the cost to Husband and the contemporaneous value to Wife of the survivor benefit, the Trial Court relied on Husband's testimony and the expert testimony of Porter. The Trial Court's findings as to the values of these two aspects of Husband's retirement package are clearly within the range of competent evidence submitted, and the evidence does not preponderate against these findings. We, therefore, affirm the Trial Court's judgment in this regard.

Concerning the Pension aspect of Husband's retirement package, the Trial Court held only that this Pension was not subject to a QDRO. The Trial Court did not assign a present day value to the Pension and did not undertake to determine how much of that present day value was properly considered a marital asset. The net effect of the Trial Court's action was to assign a value of $0 to the Pension and award it to Husband. Clearly Husband's Pension, including the marital portion of that Pension, has a present day value that is in excess of zero dollars.

We are uncertain why the Trial Court concluded the Pension was not subject to a QDRO. Neither party discusses this in their briefs on appeal. The Trial Court obviously agreed with Husband, but the record does not disclose why Husband believed the Pension was not subject to a QDRO or why the Trial Court accepted this conclusion. Without knowing more and based on the record before us, we are unable to conclude whether or not the Trial Court was correct when it concluded Husband's pension was not subject to a QDRO. Nevertheless, even assuming the Pension is not subject to a QDRO, this fact alone does not mean that no part of the Pension can constitute marital property or that it has no value. If a present day value can be placed on Wife's survivor benefits as the Trial Court did, then certainly a present day value likewise can be placed on the marital portion of Husband's Pension. We must, therefore, remand this case to the Trial Court to conduct further proceedings and determine what percentage of Husband's Pension is marital property and the present day value of that marital asset. It is for this reason we vacate the entire marital property distribution and remand this matter to the Trial Court to make an equitable division of all the marital assets including the marital asset portion of Husband's Pension.

In summary, we affirm the value placed by the Trial Court on the Annuity and the survivor benefit to Wife. We nevertheless vacate the entire marital property distribution and remand this case to the Trial Court for a determination of how much of Husband's Pension is marital property and its present day value. Including this portion of the Pension that is marital property, the

Trial Court then must equitably divide the marital property. We do not mean to imply that on remand the Trial Court must divide each and every marital asset between Husband and Wife. Rather, the Trial Court is required to make an overall equitable division of the marital estate which does not require that Husband and Wife each receive a share of any particular marital asset.

The next main issue is Wife's claim that the Trial Court abused its discretion when it awarded Husband $25,000 in attorney fees. In *Cheatham v. Cheatham*, No. 01A01-9508-CH-00380, 1997 Tenn. App. LEXIS 841 (Tenn. Ct. App. Nov. 25, 1997), *no appl. perm. appeal filed*, this Court discussed awards of attorney fees in divorce cases as follows:

> Awards for legal expenses in divorce litigation are considered to be additional awards of spousal support. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); *Raskind v. Raskind*, 45 Tenn. App. 583, 601, 325 S.W.2d 617, 625 (1959). They are appropriate when an economically disadvantaged spouse lacks funds to defray his or her legal expenses, *see Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980), but are inappropriate when the spouse seeking the award is able to pay his or her own lawyer either from his or her own earnings or from the assets received in the divorce. *See Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn. 1991); *McCarty v. McCarty*, 863 S.W.2d 716, 722 (Tenn. Ct. App. 1992).

> These awards for legal expenses should be distinguished from monetary sanctions for discovery abuse permitted by Tenn. R. Civ. P. 37.01(4) and Tenn. R. Civ. P. 37.02. We have approved the imposition of monetary sanctions for discovery abuse in a divorce case following an appropriate motion and hearing. *See Mansfield v. Mansfield*, 1995 Tenn. App. LEXIS 723, App. No. 01 A01-9412-CH-00587, 1995 WL 643329, at *8 (Tenn. Ct. App. Nov. 3, 1995) (No Tenn. R. App. P. 11 application filed). However, we have also held that awards for additional legal expenses caused by obstructive behavior should not be awarded in the absence of a proper request for monetary sanctions. *See Turner v. Turner*, 1997 Tenn. App. LEXIS 219, App. No. 01 A01-9506-CV-00255, 1997 WL 136448, at *13 (Tenn. Ct. App. Mar. 27, 1997) (No Tenn. R. App. P. 11 application filed).

> Ms. Cheatham did not pursue monetary sanctions against Mr. Cheatham in accordance with Tenn. R. Civ. P. 37. The trial court never held a hearing concerning the propriety of sanctions and never determined the portion of Ms. Cheatham's legal expenses that could properly be applicable to Mr. Cheatham's inappropriate conduct during discovery. Accordingly, we cannot review the trial court's

-8-

decision to award Ms. Cheatham $ 41,141.98 in legal expenses using the standards of Tenn. R. Civ. P. 37. Rather, we must review the attorney fee award using the standards traditionally used to review awards for legal expenses in divorce cases. *See Turner v. Turner*, *supra,* 1997 Tenn. App. LEXIS 219, 1997 WL 136448, at *13.

*Cheatham*, 1997 Tenn. App. LEXIS 841, at **22 - 24.

In the present case, as in *Cheatham*, there was no formal request for sanctions under the Rules of Civil Procedure. Husband's Final Argument did request payment of attorney fees claiming Wife unnecessarily prolonged the litigation. We do not believe this rises to the level of a formal motion as required by Tenn. R. Civ. P. 11 and/or 37. The Trial Court concluded Wife threatened to bankrupt Husband with these divorce proceedings and prolonged the litigation, resulting in eight hearings.[4] However, absent a proper request for sanctions by Husband, we cannot conclude the Trial Court correctly awarded payment of $25,000 in attorney fees because of Wife's obstructive behavior. This is even more apparent since the Trial Court never conducted a hearing to determine the amount of additional attorney fees incurred by Husband resulting from Wife's improperly prolonging these proceedings.

At least some portion of the $25,000 in attorney fees was awarded because of Wife's obstructive behavior. However, the Trial Court also discussed Wife's inappropriate marital conduct when awarding attorney fees, leading to the conclusion that perhaps some portion of the $25,000 was awarded under the traditional standard for awarding legal expenses in divorce cases. As noted by this Court in *Yount v. Yount*, 91 S.W.3d 777 (Tenn. Ct. App. 2002):

> [A]n award of such fees in a divorce case is considered to be a part of the alimony awarded. *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992). As such, in determining whether to award attorney fees, the trial court should consider all the relevant statutory factors, including the relative fault of the parties. *Lindsey v. Lindsey*, 976 S.W.2d 175 (Tenn. Ct. App. 1997). It is considered most appropriate where the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney. *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992). An award of attorney fees is considered to be within the sound discretion of the trial court, and will not be reversed on appeal if that discretion is not abused. *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996).

---

[4]Ironically, during the pendency of this appeal Wife filed for Chapter 13 bankruptcy resulting in an automatic stay of this litigation. The Bankruptcy Court lifted the stay on July 31, 2003.

*Yount*, 91 S.W.3d at 783.

Therefore, to the extent the award of attorney fees was a sanction imposed by the Trial Court for Wife's obstructive behavior, we vacate that award in the absence of any formal request for sanctions by Husband and a hearing to determine the appropriate amount of such sanctions. Because, pursuant to our Opinion and Judgment, the Trial Court must reassess the marital property division, we cannot determine at this time if an award of attorney fees to Husband will be appropriate under the traditional standard. To the extent the award of attorney fees was awarded under the traditional analysis in a divorce action, that award is likewise vacated and can be revisited by the Trial Court once an equitable distribution of the marital assets is made on remand.

Wife also has requested that she be awarded her attorney fees incurred in this appeal. We believe that such an award would be inappropriate based on the evidence in the record before us. Wife is able to pay her own lawyer. She is not an economically disadvantaged spouse. Therefore, we deny Wife's request for attorney's fees incurred in this appeal.

## Conclusion

We affirm the Trial Court insofar as it granted the parties a divorce. The Trial Court's distribution of marital property is vacated as is the award to Husband of $25,000 in attorney fees. In all other respects, the judgment of the Trial Court is affirmed. Therefore, the Judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings as are required consistent with this Opinion, and for collection of the costs below. Exercising our discretion, the costs on appeal are assessed one-half against the Appellant Morgan Susanne Fox and her surety, and one-half against the Appellee Steven Craig Bolden.

_____
D. MICHAEL SWINEY, JUDGE